## THE NEW ROCHELLE.

### FIX et al. v. UNITED STATES.

(District Court, N. D. Ohio, E. D. February 27, 1923.)

Maritime liens ⊂⊃25—No lien for merely repairing boiler tubes at vessel at distance from, and not delivered to, vessel.

Under Ship Mortgage Act 1920, § 30, subsec. P (Comp. St. Ann. Supp. 1923, § 8146¼ooo), giving maritime lien for furnishing repairs or supplies to a vessel, they must have been delivered to the vessel; and there is no lien for cleaning and rewelding a vessel's boiler tubes at a distance from it, they not being shipped or delivered to it, but cause of action is in personam against contracting party.

In Admiralty. Libel by John W. Fix and others against the United States, as owner of the steamship New Rochelle. Libel dismissed.

WESTENHAVER, District Judge. Libelants, a partnership, having their principal place of business at Cleveland, Ohio, filed in this court this libel against the United States under favor of section 2, act of Congress known as the Suits in Admiralty Act, approved March 9, 1920 (41 Stat. 525 [Comp. St. Ann. Supp. 1923, 1251¼a]). The libelants elect in their libel to proceed in accordance with the principles of libels in rem, as is permitted by section 3 of said act (Comp. St. Ann. Supp. 1923, § 1251¼b). Libelants' claim is for work and labor performed in cleaning and rewelding 1,280 boiler tubes for a steamship, then known as the New Rochelle, now the President Fillmore. This work was ordered by the Baltic Steamship Corporation, July 16, 1920, was performed at Cleveland, Ohio, and was finished about December, 1920. These boiler tubes were intended to be returned to said steamship and carried aboard her as extra or supply parts. They were never, in fact, shipped from Cleveland, received by the Baltic Steamship Corporation, nor delivered to or placed aboard said steamship, but, ever since received by libelants have been, and still are, at Cleveland in their custody and possession.

This steamship during the time in question was and still is owned by the United States. On April 28, 1920, the United States Shipping Board entered into a charter sales agreement with Charles G. A. Pfitsch, trading as the International Bureau of Supplies. On May 3, 1920, the steamship was delivered to him pursuant to this agreement, at the port of New York. On November 4, 1920, the charter sales agreement of April 20 was canceled and a new charter sales agreement entered into with the Baltic Steamship Corporation of America in lieu thereof. In both of these agreements, provisions are contained too long to quote or summarize, but which clearly and explicitly deprive the charterer of all authority to bind the vessel for repairs, supplies, or other necessaries.

When libelants were approached by one Fred Harmon and asked for prices and sample of their welding work, they were informed by him that the cleaning and rewelding was to be done for the New Rochelle, and that she was owned by the Baltic Steamship Corporation. Harmon was not connected with, nor authorized by, that company to order repairs, but it was then clearly understood that he was a mere volunteer, and that, if an order was placed, it would be placed later by the owner or some authorized agent of the owner. The order was in fact placed by a letter dated July 16, 1920, on the letter head of the Baltic Steamship Corporation. The libelants, neither then nor at any time before completing the work, made any inquiry or exercised any diligence to ascertain whether or not the Baltic Steamship Corporation had authority to bind the vessel.

When this order was placed, the New Rochelle was lying in port at Jersey City, undergoing repairs. These repairs were completed, and she was placed in the ocean mercantile service not later then October, 1920. She was on January 26, 1921, redelivered to the United States Shipping Board, and the rights acquired by the Baltic Steamship Corporation under its charter sales agreement were thereupon finally terminated. This libel was filed October 6, 1922, at which time the evidence shows that the steamship was probably in Germany, having left the port of New York for Bremen, Germany, September 29, and was later reported as having sailed on her return trip from Bremen Oc-

tober 18, and was due at New York October 27, 1922.

No allegation is made in the libel as to the presence of the vessel at the time it was filed, in any port of the United States or of any of its possessions.

Such are the facts. Respondent insists that relief cannot be granted, for the following reasons: (1) That this court is without jurisdiction; (2) that no maritime lien attaches to the vessel under the circumstances stated; (3) that, if the supplies had in fact been furnished and delivered, the libelants are without remedy, because of the terms of the charter sales agreement and their failure to exercise reasonable diligence to ascertain the same.

1. That this court has not jurisdiction of this proceeding is held in Blamberg v. United States, 260 U. S. 452, 43 S. Ct. 179, 67 L. Ed. 346, 1923 A. M. C. 50, affirming (D. C.) 272 F. 978. It is there held that the Suits in Admiralty Act does not confer jurisdiction of a proceeding based upon a maritime lien, enforceable only in accordance with the principles of a libel in rem, if the vessel is not within a port of the United States and its possessions at the time the libel is filed. In this case it is not asserted that the United States is liable in personam, since the contract was not with any of its authorized representatives but with the Baltic Steamship Corporation. On the contrary, it is conceded that liability can be established only on the principles of maritime law which make a vessel liable in rem for repairs, supplies, or other necessaries. Hence, in my opinion, it follows that this case, upon the facts, falls within the rule of Blamberg v. United States. In Cunard Steamship Co. v. United States, as owner of the S. S. Isonomia, recently decided by the Court of Appeals, Second Circuit, 285 F. 516, 1923 A. M. C. 132, it was also held that a district court has not jurisdiction, under section 2 of said act, of a libel to enforce a maritime lien binding the vessel on in rem principles unless at the time it is filed the vessel is within the district. The contrary was held in Middleton & Co. v. United States (D. C.) 273 F. 199, and in a number of other unreported cases. It is unnecessary to express any opinion upon this disputed question.

2. Upon the facts above stated, no maritime lien is created binding this vessel. By subsection P, § 30, Ship Mortgage Act 1920, approved June 5, 1920 (41 Stat. 988 [Comp. St. Ann. Supp. 1923, § 8146¼ooo]), re-enacting in substance section 1, Act June 23, 1910 (Comp. Stat. § 7783), a maritime lien exists only when repairs, supplies, and other necessaries are furnished to the vessel upon the order of the owner or of some person duly authorized by the owner. It is settled law that the repairs, supplies, or other necessaries must have been delivered to the vessel in order that a maritime lien will arise. If the claim is based upon the breach of a contract for the purchase or procurement of supplies which are never delivered to the vessel, then a maritime lien, enforceable by a proceeding in rem, is not created. Osaka Shosen Kaisha v. Pacific Export Lumber Co., 260 U. S. 490, 43 S. Ct. 172, 1923 A. M. C. 55; Piedmont Coal Co. v. Seaboard Fisheries Co., 254 U. S. 1, 41 S. Ct. 1, 67 L. Ed. 97; The Yankee, 233 F. 919, syl. 5, 147 C. C. A. 593; The Curtin (D. C.) 165 F. 271; The Vigilancia (D. C.) 58 F. 698; The Cabarga, 4 Fed. Cas. No. 2276. See, also, The S. L. Watson (1st C. C. A.) 118 F. 945, 952, 55 C. C. A. 439, cited with approval by Mr. Justice McReynolds in Osaka Shosen Kaisha, supra. Consequently, since it appears in this case that the cleaning and rewelding of these boiler tubes was done at Cleveland and not on or about the vessel, and they were never shipped from libelants' place of business, nor delivered to nor in the vicinity of the vessel, it results from the foregoing authorities that no maritime lien attaches to the vessel but that libelants' cause of action is in personam against the person or corporation with which their contract was made.

3. The respondent urges that, since this work and labor was not ordered by the owner of the vessel or by a duly authorized agent of the owner, but was, on the contrary, ordered by a charterer having possession under a charter sales agreement which forbade the charterer from binding the vessel for repairs, supplies, and other necessaries, the libelants cannot in any event recover, because they failed to exercise reasonable diligence to ascertain the terms of such charter sales agreement. That the charter sales agreement in this case left Charles G. A. Pfitsch and later the Baltic Steamship Corporation without authority to bind the vessel is settled by United States, as owner of the Steamships Clio and Morganza et al. v. Carver, 260 U. S. 482, 43 S. Ct. 181, 67 L. Ed. 361, 1923 A. M. C. 47, decided by the United States Supreme Court January 2, 1923, in which similar provisions of a charter party were considered and held to deprive the charterer of such authority. Respondent also urges that this case is au-

thority for the proposition that libelants did not exercise reasonable diligence as required by section 3, Act June 23, 1910 (Comp. St. § 7785), and by subsection R, § 30, Ship Mortgage Act 1920, approved June 5, 1920 (Comp. St. Ann. Supp. 1923, § 8146¼pp). To the same effect is cited Pensacola Shipping Co. v. Fleet Corporation (5 C. C. A.) 277 F. 889. Libelants insist that these cases are not to be regarded as having this controlling effect, because, as they insist, the law was well settled prior thereto that a furnisher of supplies to a vessel is not obliged to inquire whether the person in possession has authority, but is only required to exercise reasonable diligence after being put on notice, and that a settled rule ought not to be regarded as overturned without a more definite expression of opinion by the United States Supreme Court. It is unnecessary to express any opinion upon this disputed question.

For the foregoing reasons, the libel will be dismissed. Judgment is rendered against the libelants for the costs. An exception will be noted.