## CARR et al. v. GEORGE E. WARREN CORPORATION et al.

(Circuit Court of Appeals, Fourth Circuit. October 21, 1924.)

No. 2254.

**1. Maritime liens ⚖➝27—Furnisher of coal held entitled to lien.**

A furnisher of coal, which was actually purchased on the credit of certain steamers, billed to them, and used by them, *held* to have a lien for the same, though it was all delivered on a pier where they customarily coaled.

**2. Maritime liens ⚖➝24—Furnisher of repairs held entitled to lien.**

Claimant, which furnished boiler tubes for repair of a steamer on her credit, which were delivered to and used by her, though they were billed to the owner, *held* entitled to a lien.

Appeals from the District Court of the United States for the Eastern District of Virginia, at Norfolk; D. Lawrence Groner, Judge.

In a suit by the Norfolk Coal & Ice Company, Inc., against the steamers F. H. Beckwith and E. J. Codd, an appeal was taken by J. O. Carr, trustee, and others, interveners, from a decree allowing maritime liens in favor of the George E. Warren Corporation and the Crook-Horner Supply Company. Affirmed.

George M. Lanning, of Norfolk, Va. (Baird, White & Lanning and Edward R. Baird, Jr., all of Norfolk, Va., on the brief), for appellants.

H. H. Little, of Norfolk, Va. (Hughes, Little & Seawell and Leon T. Seawell, all of Norfolk, Va., on the brief), for appellees.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

WADDILL, Circuit Judge. This case involves two certain claims filed by the appellees herein, interveners in the case of the Norfolk Coal & Ice Company, Inc., against the steamers F. H. Beckwith and E. J. Codd, pending in said court, and for which

maritime liens are asserted; that of the Warren Corporation being for coal furnished the two steamers, and that of the appellee Crook-Horner Supply Company, for certain boiler tubes purchased for and installed in the Beckwith. The District Court decided that the interveners were each entitled to the lien, the Warren Corporation upon the proceeds arising from the sale of the two vessels, and the Crook-Horner Company on the proceeds arising from the sale of the Beckwith, superior to those of the mortgagees of the vessels, and ordered payment thereof. From that decision this appeal was taken, and it is solely as to the correctness of the court's ruling in adjudging the two interveners to hold maritime liens for the amounts of their debts that this court has to pass. The questions arising on the Warren claim will be considered first.

[1] Appellants insist that, while there is no dispute as to the amount and validity of the indebtedness, no maritime lien exists therefor, because the credit for the coal purchased was not given to the steamers, but to the Chincoteague Fish Oil & Guano Company, the owner of the vessels, and that said coal was not delivered and placed upon and used by the steamers so as to give maritime liens therefor.

Appellees rely for their lien on the provisions of section 1 of the Act of June 23, 1910, 36 Stat. 604, as amended by the Act of June 5, 1920, 41 Stat. 1005 (Comp. St. Ann. Supp. 1923, § 8146¼ooo). Appellants cite and rely upon the recent case of Piedmont & Georges Creek Coal Co. v. Seaboard Fisheries Co., 254 U. S. 1, 41 S. Ct. 1, 65 L. Ed. 97, in support of their contention. A careful examination of this case will show that it does not seriously militate against the conclusions we have reached here. The following is a succinct statement from the opinion of Mr. Justice Brandeis in the Piedmont Case (pages 6 and 7 [41 S. Ct. 2]):

"No coal was delivered by the coal company directly to any vessel, and it had no dealings of any kind concerning the coal directly with the officers of any vessel. All the coal was billed by the coal company to the oil corporation, and there was no reference on any invoice, or on its books, either to the fleet or to any vessel. There was no understanding between the companies when the agreement to supply the coal was made, or when the coal was delivered, that any part of it was specifically for any one of the several vessels libeled, or that it was for

any particular vessel of the fleet, or even for the vessels then composing the fleet. Indeed, the first shipment was stated on the invoice to be 'coal for factory.' The negotiations of the oil corporation with the coal company did not relate to coal required at that time by the particular vessels subsequently libeled, as distinguished from other vessels of the fleet."

The oil company purchased the coal in question, with the understanding that the coal company was to have a lien on the vessels for the price of the coal used by them, but the same was billed by the coal company to the oil corporation, and delivered to it; the first invoice stating in terms that it was for the factory. The coal was placed by the oil company in its coal bins, intermingled with its own coal, and subsequently parceled out between its factory and its vessels as its necessities demanded. Such purchase was not only made upon the faith of the owner of the vessels, but nothing was done from a maritime viewpoint, as the Supreme Court held, that would tend to give or create a lien upon the vessels, and in these circumstances it is hard to understand upon what theory the lien could be maintained.

In the present case, 85 per cent. of the coal was sold directly for use of the steamers named, and so billed to the vessels, and received and used by them. The plant of the company was at Chincoteague Island, in the open sea, and coal could be gotten to it only by transporting the same on barges from the mainland, where it was placed upon the company's pier. The particular consignment under consideration consisted of 835 tons, which was placed upon a barge at Norfolk and towed to Chincoteague and unloaded upon the piers. The coal was billed 15 per cent. to the factory, which was purchased for its use, and the residue of 85 per cent. billed in equal parts to the four steamers, and the coal was placed on the piers at which the steamers coaled, and was all taken and used by them. Indeed, the steamers actually trenched upon the 15 per cent. sent out for the factory.

In this case, the coal was actually purchased on the credit of the steamers, billed to the steamers, and used by them. Under these circumstances a lien clearly exists for the coal furnished and used on the vessels, and the District Court properly so held.

[2] Second. The claim to a lien by the Crook-Horner Supply Company seems equally clear. This was for boiler tubes, which, though billed to the Chincoteague Fish Oil & Guano Company, were purchased for use on the steamer Beckwith, and on her credit, and the supplies were actually delivered to and installed on the steamer. The special master and the District Judge each concurred in the finding that these supplies were sold on account of the vessel, and that the supply claimant was entitled to a lien therefor on the vessel, or the proceeds arising from the sale thereof, and in this finding we fully concur, as well because of our impression of the facts, as because the master and the District Court have each concurred in the same conclusion.

The decision of the District Court will be affirmed, with costs.

Affirmed.