## THE AMERICAN EAGLE.

District Court, D. Delaware.   January 30, 1929.

No. 1253.

Willard M. Harris, of Philadelphia, Pa., for libelant.

William G. Mahaffy, of Wilmington, Del., and Howard M. Long, of Philadelphia, Pa., for sundry objecting libelants.

MORRIS, District Judge.   To the report of the commissioner finding that the libelant J. E. Sadler & Co. is not entitled to a maritime lien against the American Eagle for coal used by that dredge and alleged to have been "furnished" to it by the libelant, the libelant has filed exceptions.

The dredges American Eagle and Gray Eagle, owned by W. H. French Dredging & Wrecking Company, Inc., were engaged in dredging the Chesapeake and Delaware Canal at the port of Delaware City.   Henry L. Lewis, an officer of the dredging company, whose authority to act for their owner in placing orders for supplies for the dredges is not questioned, ordered coal from the libelant, saying "that they wanted it about fifty-fifty, the two dredges."   Upon this order coal, at the price of $5.90 a ton and of the aggregate value of $3,375.62, was supplied by the libelant, received on board the two dredges, and used by them.   No coal other than that supplied by the libelant was used by them at Delaware City.   The coal was sold f. o. b. the libelant's wharf at Delaware City, from which, without physical division of the bulk into one part specifically designated for the American Eagle and into another for the Gray Eagle, the coal was loaded in the mass by the dredging company upon its lighter tending the dredges.   From the lighter it was put aboard the dredges as their needs required, but without any record being made of the amount delivered to each, though in the estimation of the employees of the dredges and the officers of the dredging company the amount of coal used by each dredge was substantially the same.   Receipts for the coal, when placed upon the lighter of the dredging company, were signed by the captain of one or the other of the dredges, without discrimination.

Some of the charges for the coal were made against the owner "a/c dredges American Eagle and Gray Eagle, C. & D. Canal job," and the remainder were made against the owner "a/c C. & D. Canal job, Delaware City, Delaware."   Payment not being made, the Sadler Company filed a libel in personam against the owner to recover for all the coal supplied, and soon thereafter filed a libel against the American Eagle to recover for one-half the coal, and another libel against the Gray Eagle to recover for the remaining half.   The commissioner, to whom these two libels in rem and numerous other libels filed

294

against each of the dredges were referred, found that under the facts and the law maritime, as laid down in Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Co., 254 U. S. 1, 41 S. Ct. 1, 65 L. Ed. 97, the coal was furnished to the dredges, not by the libelant, but by the dredging company, and that, in any event, in the light of The Alligator (C. C. A.) 161 F. 37, the amount of coal delivered to the respective dredges could not be ascertained from the record with sufficient certainty to support a maritime lien against either dredge.

The basic questions raised by the exceptions · are (1) whether the coal was "furnished" to the American Eagle by the libelant or by the dredging company; and (2) if by the libelant, whether the amount so furnished can be ascertained from the evidence with sufficient certainty to support a maritime lien. Questions incidental to the first of these basic questions are (a) whether the filing by the libelant of the libel in personam prevents the libelant from now asserting that the coal was furnished by it to the vessel; and (b) whether in any event the failure of the libelant to divide the coal physically into two parts or lots, and to designate by appropriate marks or otherwise the particular lot to be supplied to the American Eagle, is a bar to the asserted maritime lien against that dredge.

Was the coal used by the American Eagle furnished to it by the libelant? The Act of June 23, 1910, 36 Stat. 604, c. 373, set out at length at 233 F. 922, re-enacted with amendments as section 30, subsections P to T, of the Merchant Marine Act of 1920 (46 USCA §§ 971–975), lays down no rule for the solution of this problem. The answer to it must be found in the facts, when measured by the general maritime law, unmodified by decisions such as The Kiersage, Fed. Cas. No. 7,762, Berwind-White Coal Mining Co. v. Metropolitan Steamship Co. (C. C.) 166 F. 782, and Berwind-White Coal Mining Co. v. W. & A. Fletcher Co. (C. C. A.) 173 F. 471, which rest upon state statutes growing out of or bearing a close analogy to mechanic's lien laws. In this field there are three outstanding cases: Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Co., 254 U. S. 1, 41 S. Ct 1, 65 L. Ed. 97; Ely v. Murray & Tregurtha Co., 200 F. 368 (C. C. A. 1); The Yankee, 233 F. 919 (C. C. A. 3). Though these cases are alike in their facts to the extent that in each the supplies were actually delivered to the vessel by its owner, who received them from the libelant, yet in the first it was held that the supplies were "furnished"

to the vessel by its owner, while in the last two it was decided that they were "furnished" by the libelants.

The further facts found in the last two cases, but not in the Piedmont Case, and their legal effect, were indicated by the Circuit Court of Appeals for the First Circuit, sitting in the Piedmont Case (there reported as The Walter Adams, 253 F. 20, 27), thus: "Where specific supplies or materials have been furnished to the owner upon a distinct understanding that they were for a specified vessel, and the owner has, after delivery to him, appropriated them to the vessel so designated between the parties, they have been held to have been furnished to her in the sense of the Statute; and maritime liens for them under it have been sustained." In the Piedmont Case, the coal delivered by the libelant to the owner of the fleet was put with the owner's general stock of coal in its bins, where in some instances it lay for months. Moreover, the Supreme Court, in distinguishing that case from The Yankee, said: "In the case at bar there was no understanding when the contract was made, or when the coal was delivered by the libelant, that any part of it was for any particular vessel or even for the vessels then composing the fleet. And it was clearly understood that the purchasing corporation would apply part of the coal to a nonmaritime use."

The distinguishing character of the facts found in The Yankee and the Ely Cases, but not in the Piedmont Case, has likewise been recognized in The Cora P. White (D. C.) 243 F. 246; The Fearless (D. C.) 14 F. (2d) 1004, on appeal (C. C. A.) 14 F.(2d) 1006, and in principle, I think, in Carr v. George E. Warren Corporation (C. C. A.) 2 F.(2d) 333. The facts in the case at bar distinguish it, in my opinion, from the Piedmont Case, and bring it within the principle of The Yankee and the Ely Cases.

■ The filing by the libelant of the libel in personam is not a bar to the libel in rem, Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Co., 254 U. S. 1, 10, 41 S. Ct. 1 (65 L. Ed. 97), and is of but little, if any, pertinency upon the issue of who furnished the coal to the dredge.

■ The further ruling in the Piedmont Case that, while one vessel of a fleet is not liable for supplies furnished to others, yet each vessel receiving supplies may be liable under the Act of June 23, 1910, for those received by it, even if the supplies for the several vessels are purchased by the owner under a single contract, 254 U. S. at pages

295

10, 11 (41 S. Ct. 1), and the decision in Carr v. George E. Warren Corporation, 2 F.(2d) 333 (C. C. A. 4) that, though coal was purchased by the owner of a fleet and factory under, apparently, a single contract and there was no physical segregation from the mass by the supplyman of that for factory and that for fleet, or of the part intended for each vessel, the several vessels were nevertheless subject to a lien for the value of the coal billed to and used by each, are, I think, a complete refutation of any contention that either singleness of contract or want of physical setting apart of the articles or supplies designed for each vessel of a fleet, or both, constitute an insurmountable bar, upon any ground, to the asserted maritime lien against the American Eagle.

While it is true that the Supreme Court in the Piedmont Case, in declining there to be governed by the principles of The Kiersage and Berwind-White Coal Mining Co. v. Metropolitan Steamship Co., held in effect that there must be something more than a delivery under a single contract of supplies in mass to the owner of a fleet, and their subsequent distribution by the owner among the vessels of his fleet, to give rise to a maritime lien against the several vessels, or any of them, yet it seems clear, from that which that court further said in quoting from and commenting upon The Yankee, that all additional requirements for a maritime lien against the several vessels are met, if the supplies, though delivered in mass to the owner of the fleet under a single contract, are expressly ordered by the owner and delivered to him by the supplyman for the use of named vessels in specified portions, and are promptly delivered to the named vessels by their owner without being first commingled by him with his general stock of like supplies. Since these additional facts appear in the case at bar, I am of the opinion that the nonsegregation from the mass and the nonlabeling by the libelant of a particular part of the coal for the American Eagle constitute no bar to the asserted lien against that dredge.

Notwithstanding one-half of the total amount of coal furnished to the two dredges by the libelant was ordered for each dredge, and was delivered by the libelant to the owner of the dredges to be so divided between them, the law seems well settled that, before either dredge may be made subject to a maritime lien, delivery to the dredge must also be shown. The New Rochelle (D. C.) 8 F.(2d) 59. There can be no delivery to a ship, in the maritime sense, adequate to bind the ship in rem, unless the supplies are either actually put on board, or are brought within the control of the ship's officers. The Vigilancia (D. C.) 58 F. 698; The Geisha (D. C.) 200 F. 865. In short, to bind a vessel in rem, the supplies must not only be ordered for a particular vessel, and be shipped or delivered for the particular vessel, but they must also be actually or constructively put on board that vessel. Hence, since only one-half the total amount of coal supplied by the libelant was ordered by the owner of the dredges and delivered by the libelant for each dredge, the lien against either dredge cannot exceed in amount one-half the value of the coal used by the two dredges. Nor may the amount of the lien against either be that much, unless it satisfactorily appears from the record that the coal received by the dredge in question amounted to at least that proportion of the whole. But the fact that the record here fails to disclose by weight or measurement, or other direct and expressed testimony, that the actual distribution of the coal between the two dredges corresponded precisely with the order of the owner and the intent of the libelant, is not, I think, a bar to the establishment of a lien against each for such amount—not exceeding one-half—as is clearly and satisfactorily shown to have been delivered to each. The asserted lien in The Alligator (C. C. A.) 161 F. 37, relied upon by the commissioner, failed, as I understand it, because in that case the services were ordered for and rendered to the fleet as a whole, not to particular vessels. The contrary was true in The Murphy Tugs (D. C.) 28 F. 429.

Here, all the evidence is that the coal was ordered and delivered in specified portions for each dredge, and that each dredge actually received and used about the same amount of coal as the other. The evidence with respect to the amount of coal used by each, however, consists wholly of opinions or estimates based upon approximate operating time and the horse power or capacity of the respective dredges. In such testimony there is, probably, greater opportunity for error than is to be found in credible testimony showing by weight or measurement the amount of coal actually delivered to each dredge. Since each dredge is chargeable only with the amount of coal actually received, any doubt with respect to the accuracy of the estimates must be resolved against the libelant, and the estimates discounted to whatever extent may be

necessary to make reasonably certain that the dredge is not being charged with a greater quantity of coal than was actually received by it. That the American Eagle received some coal from the libelant is certain. That it received from the libelant all the coal used by it while in the port of Delaware City is equally certain. For the amount so used, if ascertainable from the record, the libelant is entitled to a maritime lien. Considering the evidence as a whole, I think it clear that the American Eagle received and used at least 45 per centum of the total amount of coal supplied by the libelant to the two dredges.

Consequently I am of the opinion that the libelant is entitled to a decree against the American Eagle for the value of the coal so furnished to it by the libelant, or $1,519.03.