## THE DENELFRED (two cases).
### Nos. 11688, 11708.

District Court, E. D. Michigan, S. D.
June 4, 1932.

Longley, Bogle & Middleton, of Detroit, Mich., for libelant James N. Kimball.

Meginnity & Karay and Bratton & Bratton, all of Detroit, Mich., for libelant Weissgerber Paint & Varnish Co.

Warren, Hill & Hamblen, of Detroit, Mich., for libelant Guardian Nat. Bank of Commerce.

Sempliner, Dewey, Stanton & Bushnell, of Detroit, Mich., for libelant Kean Estates Corporation.

TUTTLE, District Judge.

This is an admiralty proceeding in which various libelants have filed libels, which have been consolidated for trial, and intervening libels, in rem against the respondent vessel, the yacht Denelfred, seeking to enforce maritime liens claimed by such libelants against such yacht. The amount which each libelant is entitled to recover, at least from the owner of the vessel, is not in dispute. Nor does such owner dispute the right of any such libelant to the lien claimed by it. It is, however, undisputed and apparent that the proceeds of the sale of the vessel will be insufficient to satisfy all of the claims of the libelants, and that such proceeds must be distributed to those entitled to maritime liens herein, according to their respective priorities.

The only lien claimed by the libelant Guardian National Bank of Commerce is based upon a mortgage held by it upon the yacht, which mortgage it concedes to be subsequent and subordinate to any maritime liens to which any of the other libelants may be entitled under applicable provisions of the Federal maritime lien statute (sections 971, 972 and 974 of title 46 of the United States Code [46 USCA §§ 971, 972, 974]).

Section 971, just cited, is as follows: "Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel."

Section 972 provides as follows: "The following persons shall be presumed to have authority from the owner to procure repairs, supplies, towage, use of dry dock or marine railway, and other necessaries for the vessel: The managing owner, ship's husband, master, or any person to whom the management of the vessel at the port of supply is intrusted. No person tortiously or unlawfully in possession or charge of a vessel shall have authority to bind the vessel."

Section 974 contains the following provision: "Nothing in this chapter shall be construed to prevent the furnisher of repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, or the mortgagee, from waiving his right to a lien, or in the case of a preferred mortgage lien, to the preferred status of such lien, at any time, by agreement or otherwise."

It will be noted from the language of the statute just quoted that only persons "furnishing" the necessaries there mentioned "to" a vessel are entitled to the maritime lien thereby prescribed. It is settled law that necessaries are "furnished" only if and when they are either actually delivered on board of, or at the side of, a vessel, or else delivered to its owner or his authorized agent for the purpose of and followed by, delivery to such vessel. Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Co., 254 U. S. 1, 41 S. Ct. 1, 65 L. Ed. 97; The Vigilancia (D. C.) 58 F. 698; The Alligator, 161 F. 37 (C. C. A. 3); The Geisha (D. C.) 200 F. 864, 865; The Yankee, 233 F. 919 (C. C. A. 3); The Cora P. White (D. C.) 243 F. 246; The Defiance (D. C.) 3 F.(2d) 48; The New Rochelle (D. C.) 8 F.(2d) 59; The Fearless, 14 F.(2d) 1006 (C. C. A. 3). As was pointed out by the Supreme Court in Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Co., supra, at page 8 of 254 U. S., 41 S. Ct. 1, 3: "To hold that a lien for the unpaid purchase price of supplies arises in favor of the seller merely because the purchaser, who is the owner of a vessel, subsequently appropriates the supplies to her use would involve abandonment of the principle upon which maritime liens rest and the substitution therefor of the very different principle which underlies mechanics', and materialmen's liens on houses and other structures. The former had its origin in desire to protect the ship;

the latter mainly in desire to protect those who furnish work and materials."

In view, however, of the provision in the statute, already quoted, dispensing with the necessity of reliance on the credit of the vessel, the fact that necessaries furnished to a vessel are billed or charged to the owner thereof does not deprive the person furnishing such necessaries of a maritime lien therefor. Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Co., supra; Lower Coast Transportation Co. v. Gulf Refining Co., 211 F. 336 (C. C. A. 5); The El Amigo, 285 F. 868 (C. C. A. 5); Carr v. George E. Warren Corporation, 2 F.(2d) 333 (C. C. A. 4); The A. S. Sherman (D. C.) 51 F.(2d) 782.

In the language of the Supreme Court in Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Co., supra, at page 10 of 254 U. S., 41 S. Ct. 1, 4, "A vessel may be made liable in rem for supplies, although the owner can be made liable therefor in personam since the dealer may rely upon the credit of both."

It is equally well settled that, while such a lien may be waived by words or conduct indicating such an intention, the mere acceptance, by a person who has furnished necessaries to a vessel, of the promissory note of the owner of such vessel, does not, in itself, constitute, or result in, such a waiver, unless shown to have been accepted with that intention. The Emily Souder, 17 Wall. 666, 21 L. Ed. 683; Meyer v. Tupper, 66 U. S. 522, 17 L. Ed. 180; The John C. Fisher (C. C. A.) 50 F. 703; The Winnebago, 141 F. 945 (C. C. A. 6); Robins Dry Dock & Repair Company v. Chesbrough, 216 F. 121 (C. C. A. 1); The John L. Lawrence (D. C.) 231 F. 507; The Fairhope (D. C.) 235 F. 1007; The Hattie Thomas, 262 F. 943 (C. C. A. 2); The Kochaline (D. C.) 25 F.(2d) 503. The same rule applies to the commencement, by such a claimant, of an action in personam for the recovery of the amount claimed, the mere institution of such an action not having the effect of a waiver of the right to a maritime lien for such amount, in the absence of other evidence of an intention to waive such right. The General Custer, 10 Wall. 204, 19 L. Ed. 944; The Brothers Apap (D. C.) 34 F. 352; The Eastern Shore (D. C.) 24 F.(2d) 443.

It remains to apply the statutes, rules, and principles just mentioned to the facts in the present case, as disclosed by the evidence. To recite or discuss this evidence in detail would serve no useful purpose, although all of it has been carefully examined and considered. The material facts, as shown by the record and found by the court and the resultant status of the claims here involved may be stated, sufficiently for the purposes of this opinion, as follows:

The respondent vessel is a fifty-three foot, cabin cruiser yacht, which was owned by one Frederick W. Dennis for several years prior to June, 1931, at which time he conveyed it to his wife, but remained in charge of it thereafter; his authority to bind the yacht after, as well as before, such conveyance not being disputed by any one. He was generally regarded, and will be hereinafter designated, as the owner. It was on his orders that the supplies, repairs, and other necessaries here involved were furnished during the navigation season of 1931 and the preceding winter, by the libelants in question, whose claims will now be considered.

### Claim of James N. Kimball.

The claim of the libelant James N. Kimball, in the amount of $187.46, is based on the price of parts and equipment sold, delivered, and charged to the owner by the libelant. Not only is there no evidence of the delivery by such libelant of any of such parts or equipment to this yacht but there is nothing in the record to indicate any delivery thereof, to the owner or any other person, for the purpose, or with the intention or expectation, of its delivery or use on such yacht. If, therefore, as is claimed by the libelant, some or all of those materials thereafter reached the vessel, they were furnished to it by the owner and not by the libelant, and it is clear, under the authorities already cited, that the libelant is not entitled to any maritime lien therefor.

### Claim of Wilbur C. Lane.

The claim of Wilbur C. Lane, operating the De Luxe Service Station, for $101.26, represents the price of gas and oil delivered by him to the yacht and his compensation for the charging of certain electric batteries for such yacht. Although it does not appear how these amounts were originally billed, there is no doubt that they were all furnished to the yacht by the libelant, and he is, manifestly, entitled to the maritime lien claimed by him.

### Claim of Bay View Yacht Club.

The claim of the Bay View Yacht Club, in the sum of $240, is for dockage and storage of the yacht and haul-outs thereof in connection with such dockage, including the use of what was, in practical substance and effect, a dry dock system. Although the own-

er was a member of this club, and the record does not show whether the charges for these facilities and services were, in the first instance, charged to him or to the vessel, yet it is evident that such facilities were useful and necessary for the yacht, were actually and directly furnished to it by this claimant, and are a sufficient basis for the maritime lien claimed.

### Claim of Weissgerber Paint & Varnish Company.

The claim of the Weissgerber Paint & Varnish Company, in the sum of $61.54, arises from the sale, by the libelant to the owner, of supplies, substantially all of which were charged and billed to the defendant at his office address. It does not appear that any of these supplies were delivered by the libelant to this yacht or sold with the understanding by it that they would be delivered to, or used for, such yacht. It follows that the claim of this libelant to a maritime lien cannot be sustained.

### Claim of Henry H. Smith & Co.

The claim of Henry H. Smith & Co., is for repairs, supplies, stores, and accessories sold, charged, and delivered by it to the owner, some of it being delivered to him personally and some to his agent, but all on the express order of the buyer, and the distinct understanding of the seller, that they were to be used on and for the yacht. The evidence shows that this libelant was engaged in the business of furnishing marine supplies and repairs; that he knew said Dennis as the owner of this yacht; that the latter had introduced his captain to the claimant with instructions to "let him get what he wanted" for such yacht; that many of these articles were specially adjusted by the claimant so that they could be properly installed in the yacht; and that at least some of them had been identified as actually used thereon. I am satisfied by the evidence, and I find, that all of these repairs, supplies, stores, and accessories, on which this claim amounting to $946 is based, were furnished, within the meaning of the law, to this vessel by this libelant, and that it is entitled to a maritime lien therefor.

### Claim of Kean Estates Corporation.

The claim of the libelant Kean Estates Corporation, owner of what is known as the Detroit Yacht Harbor, in the amount of $250, is for storage, towage, repairs, and care of this yacht, which were not only furnished, but were charged, to such yacht by the libelant. The resultant right of the libelant to a maritime lien for this amount is too clear to require further discussion.

### Claim of George H. Power.

The claim of George H. Power, a marine carpenter, for $125, is based upon physical labor rendered by him in making repairs to the yacht. It is urged by the libelant bank, already mentioned as holder of the aforesaid mortgage, that, because this carpenter accepted a promissory note of the owner in the amount of this claim, and thereafter deposited such note in a bank, and commenced a personal action upon it against the owner, in an effort to make collection thereof, he has waived the right to a maritime lien for such claim. There is, however, nothing in the record tending to show that this claimant intended, by the acceptance of such note, or the commencement of such action, to waive his right to a lien. In fact, he testified, without dispute, that he took such note only to "please" the owner; that he informed the latter that the note was "no good" to him; and that "it wasn't given in good faith." The note was never paid, and, service of process not having been made on the owner, the action just mentioned was abandoned. In view of the applicable legal rules hereinbefore cited, and in the absence, as here, of anything to indicate an intention on the part of this libelant to waive his right to a maritime lien, I reach the conclusion that neither his acceptance of the note nor his commencement of the action constitutes such a waiver, and that his claim to a maritime lien must be sustained.

### Claim of Guardian National Bank of Commerce.

The claim of the libelant Guardian National Bank of Commerce, amounting to $20,240, based upon its mortgage on this yacht, has already been mentioned. This mortgage was executed and delivered to the libelant in December, 1931, after the accrual of all of the claims of the other libelants herein, by the wife of the said Dennis, as owner, to secure certain indebtedness to the said bank. It is clear, under familiar rules of law, and it is apparently conceded by all of the parties here concerned, including the libelant bank, that the lien of such bank under this mortgage is valid and enforceable against this yacht, but that such lien is inferior, and subject, to all of the maritime liens to which the other libelants herein are entitled.

A decree in accordance with the findings and conclusions hereinbefore stated will be entered. Counsel, on proper notice, may present a draft of such decree for entry.