THE TRANSMARINE BARGE NO. 100 (and twenty-eight other cases).

Nos. 90, 91.

Circuit Court of Appeals, Second Circuit.

Dec. 19, 1932.

Single & Single, of New York City (Forrest E. Single and Herbert P. Reid, both of New York City, of counsel), for appellants.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Robert S. Erskine and Henry P. Elliott, both of New York City, of counsel), for appellees.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge.

During the last four months of the year 1929 the libeled barges made several trips between New York and Waterford on the Hudson River in tow of tugs of the libelant, Cornell Steamboat Company. The towage was done at the request of Transmarine Corporation, which was operating the barges with the consent of their respective owners, and concededly it had not been paid for when the libels were filed on March 20, 1930. These facts would presumptively entitle the libelant to a maritime lien pursuant to section 30, subsections P and Q, of the Merchant Marine Act of 1920 (46 USCA §§ 971, 972). See The J. W. Hennessy, 57 F.(2d) 77, 80 (C. C. A. 2). But the appellants contend that no lien arose, because Cornell Steamboat Company, in rendering towage service under the arrangements it had with Transmarine Corporation, relied upon the latter's credit and not upon the credit of the specific barges taken in tow. They contend also that, if there was a lien against the specific barge libeled in each of these twenty-nine suits, the amount collectible thereunder was not established.

These contentions rest upon the course of dealings between the parties over a period of several years. In the beginning, for towage on the Hudson between Waterford and New York, Cornell made a fixed charge for a loaded boat, a fixed charge for a light boat, and an additional charge for shifting the boat

within harbor limits. But in June, 1926, they entered into a written contract, embodied in correspondence, by the terms of which Transmarine agreed to employ Cornell "to tow all boats engaged in carrying freight for the Transmarine Lines on the Hudson River or in New York Harbor for a period of three years from date hereof at a rate of thirty (30¢) cents per net ton between Waterford and terminal destination within Harbor limits, New York. Any miscellaneous shifting in New York Harbor to be charged for at customary Harbor rates."

The contract also stated that "the foregoing is intended to be the same basis as was the price for the year 1925."

Parenthetically it may be mentioned that the consideration for the Transmarine's promise to employ Cornell exclusively for three years was the latter's purchase of the tug Lion; but that fact, despite the appellant's argument to the contrary, has no bearing whatever upon the question whether the credit of the barges was relied upon in supplying them with towage.

Cornell's bills were rendered on a printed billhead which stated that "Towing is done only on the credit of the boat towed," and it is conceded that waiver of lien was never mentioned between the parties. The service rendered to each specific barge was recorded on the daily towage sheet of the tug, and at the end of each trip was posted in Cornell's ledger against the name of the boat to show the points between which it had been towed and the date of the service. After expiration of the 1926 contract, dealings between the parties were continued on the same basis throughout the rest of 1929. Hence, if the case stood with nothing further, there could be no doubt that Cornell would be entitled to a lien against each barge for the service rendered specifically to it; the amount of the lien depending upon a calculation of the pay in accordance with the terms of the above-quoted correspondence.

But there are additional facts. During 1925 and earlier years, Transmarine had given Cornell an abstract of its waybills showing the tonnage carried on each specific boat, and Cornell's bills were made up from the figures so supplied. But subsequently, and apparently before the 1926 contract, Transmarine divided its boats into several fleets, usually of five boats each, and requested as a matter of convenience to it that Cornell's bills be rendered on the basis of the fleet tonnage rather than tonnage carried by the individual barges. Thereafter Transmarine reported only the total tonnage carried by a fleet on a specified trip between Waterford and New York, and Cornell's monthly bills did not itemize the charges against each barge of such fleet, except charges for "miscellaneous shifting" within the harbor, but were rendered against the respective fleets on the basis of tonnage carried by each fleet. However, Cornell was furnished at the beginning of each season with a list of the barges constituting each of the fleets, each fleet being designated by a different letter, A, B, C, etc., so that Cornell's records and bills were sufficient to indicate the specific towage service rendered to each barge, although whether the barge was loaded or light on a specified trip was not known. Cornell accordingly assumed that each barge in a given fleet should bear an equal share—one-fifth, if the fleet comprised five boats—of the total charge for towage service based on the tonnage carried by that fleet. The amount of the liens decreed against the libeled barges, respectively, was determined on this basis.

We can see nothing in the practice of rendering bills on the basis of fleet tonnage that should be construed as evidencing an intention to rely upon the credit of Transmarine to the exclusion of a tower's lien upon the individual barges taken in tow. While it is true that one boat in a fleet may not be charged with a lien for supplies or towage furnished to another [see The Alligator, 161 F. 37 (C. C. A. 3); Astor Trust Co. v. E. V. White & Co., 241 F. 57, L. R. A. 1917E, 526 (C. C. A. 4); The American Eagle, 30 F.(2d) 293 (D. C. D. Del.)], each boat may be held liable for supplies or towage specifically rendered to it, even though under a contract providing for service to the fleet [see Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Co., 254 U. S. 1, 10, 41 S. Ct. 1, 65 L. Ed. 97; The Murphy Tugs, 28 F. 429 (D. C. E. D. Mich.)]. The change in the method of billing affected only the method of calculating the amount of the lien against each boat. It is true that on a particular trip each did not carry an equal share of the cargo, and that sometimes one or more boats in the fleet went light. But there is no reason why the parties might not agree to disregard these differences and charge each boat equally for the towage services rendered to it. It seems to us a fair inference that this is what they did agree to when they changed their method of billing. Transmarine did not want the bother of reporting the tonnage carried on each barge; it preferred to lump the tonnage carried by a fleet of five. Cornell assented, and thereafter sent its bills on that

basis. The aggregate value of the towage of the five boats was then determined by the total net tonnage of the fleet. The maritime law does not recognize a fleet as a vessel, and it is reasonable to infer that the intention was to spread this aggregate value equally among the specific boats comprising the fleet, since each received the same towage service. It would be most unjust to suppose that this procedure was intended to deprive the tower of a lien; the subject of maritime liens was never discussed, and Cornell's bills continued to carry the notation that it relied on the credit of the vessel towed.

We conclude that towage was supplied on the credit of the several barges as well as of the Transmarine Corporation, and that the amount of the lien chargeable against each boat was properly determined. It is true that the charge might have been prorated on the basis of the exact capacity of the barges, but as they did not vary greatly in size, the range being only between 375 and 430 tons, that was a refinement which apparently never occurred to the parties and should not be attributed to them. Mr. Coykendall testified that the allocation to each boat of one-fifth of the charge for towing the fleet of five represented fair and reasonable charges for the service to each boat, and the appellants offered nothing in rebuttal.

Accordingly, the decrees are affirmed.