BANKERS TRUST CO. v. HUDSON RIVER DAY LINE et al.

COLLIER ADVERTISING SERVICE, Inc., v. HUDSON RIVER DAY LINE.

THE HENDRICK HUDSON et al.

No. 81.

Circuit Court of Appeals, Second Circuit.
Dec. 20, 1937.

Delbert M. Tibbetts, Clement C. Rinehart, and Charles R. Hickox, all of New York City, for appellant.

Duncan & Mount, of New York City (Frank A. Bull, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

This appeal presents the question whether Standard Oil Company of New Jersey is entitled to maritime liens upon six vessels of Hudson River Day Line, now in receivership, for the purchase price of various quantities of fuel oil respectively used by said vessels. The District Court confirmed a report of the commissioner denying the existence of maritime liens but allowing the aggregate indebtedness as an unsecured claim. The facts must be stated in some detail.

By written contract between the parties the Day Line agreed to buy for use as fuel in the operation of six named vessels "and any other vessel owned, operated, chartered or controlled by the buyer," fuel oil to be purchased from the claimant and appellant during a term of two years beginning January 1, 1932. The contract provided that the seller shall make delivery to the buyer's vessel and "will rely on any vessel receiving fuel oil and/or this contract for the purchase price thereof." For a time the seller did deliver the oil directly to the buyer's vessels, but later the Day Line acquired two tank barges, and thereafter the oil was delivered by the seller to one of these barges, from which the buyer in its discretion would transfer the oil within five or six days to such of its vessels as might need it. Such was the procedure followed

with respect to the fuel oil involved in the case at bar. This oil was delivered to one of the buyer's barges, was receipted for by that barge, and was billed to that barge "and owners" on, or as of, the date of delivery, without regard to the date of its subsequent transfer to a particular oil-burning vessel and without the appellant knowing, or making any effort to ascertain, which vessel received it. There were eight deliveries to one or the other of the tank barges between September 1 and October 11, 1932. They totalled 14,623.78 barrels and the aggregate price was $12,414.47. After an equity receiver was appointed for the Day Line, the appellant inquired of the receiver as to which vessels had used the oil. He replied that the Line's records "indicated" that the six named vessels had respectively received the number of barrels stated in his letter. Objection to the admission in evidence of this letter was interposed by a mortgagee of the vessels, but we need not decide as to its competence; nor need we consider whether the other evidence was sufficient to establish the quantities respectively received by the several vessels. We shall assume that the oil was used on the vessels in the amounts asserted by the appellant. Even with that fact assumed, we hold that the appellant has not established a right to a maritime lien upon any of the steamers. No lien is asserted against either of the Day Line's barges.

The appellant argues that the parties expressly agreed that the credit of each vessel should be security for the contract price of the oil which it might receive. Such was their agreement so long as the seller made direct deliveries to a particular vessel; but, after this method of delivery was changed, the price of the oil delivered to one of the tank barges was billed to it and the Day Line without regard by the seller to what vessel, or when, the oil was distributed. Neither by the express terms of the contract nor by implication from the conduct of the parties is it possible to find an agreement to create a lien on the steamers for oil delivered to the barges for later distribution in the buyer's discretion among the vessels of its fleet. Hence the appellant's rights must be determined under section 30, subsection P, of the Merchant Marine Act of 1920, 46 U.S.C.A. § 971. This provides: "Any person furnishing * * * supplies * * * to any vessel * * * upon the order of the owner of such vessel * * * shall have a mar-

itime lien on the vessel, * * * and it shall not be necessary to allege or prove that credit was given to the vessel."

The decisive words, as applied to the present case, are "furnishing * * * supplies * * * to any vessel." The meaning of these words in the substantially identical provision of the Act of June 23, 1910, § 1, 46 U.S.C.A. § 971 note, was much discussed in Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Co., 254 U.S. 1, 41 S.Ct. 1, 65 L.Ed. 97. In that case the owner of a fleet of fishing steamers and of two fish-oil factories contracted for the purchase of coal necessary for the season's operations, both parties understanding that the greater part of the coal would be used on the steamers. The coal was billed and delivered to the purchaser, who later appropriated the main part of it to the vessels. It was held that the coal dealer had no maritime lien, since the coal was not furnished *by* the libelant *to* the vessels. We agree with the District Court that the principle of that decision controls the case at bar. Here the buyer received on its barges fuel undesignated as to destination except that it was for vessels of the buyer's fleet. The buyer distributed it in its discretion. It was neither delivered nor billed by the seller to the vessels against which liens are sought; nor was it ordered by the buyer for any specified vessel.

The appellant relies upon cases holding that, when the supplies are ordered for a designated vessel and actually reach her, it is not fatal to a lien that they were delivered to the owner and forwarded by him to the ship. Carr v. George E. Warren Corp. 4 Cir., 2 F.2d 333; The Yankee, 3 Cir., 233 F. 919; Ely v. Murray & Tregurtha Co., 1 Cir., 200 F. 368; The American Eagle, 30 F.2d 293, D.C.Del. The distinction between these cases and the Piedmont decision is well stated by Judge Norris in The American Eagle, supra, 30 F.2d 293, at page 295, where he points out that the requirements for a maritime lien are met, "if the supplies, though delivered in mass to the owner of the fleet under a single contract, are expressly ordered by the owner and delivered to him by the supplyman for the use of *named vessels in specified portions,* and are promptly delivered to the named vessels by their owner." (Italics supplied.) In the Carr Case 85 per cent. of the coal delivered on the owner's dock was billed in equal parts to the four steamers, and presumably was ordered for them

in those proportions. In The American Eagle the coal was ordered for two named dredges "fifty-fifty." In each of the other cases the supplies were ordered for a named vessel.

Under the statute as construed by the Supreme Court the supplies must be furnished *by* the supplyman *to* the vessel. Although the supplyman may, in effect, make the owner his agent to complete the "furnishing" by putting the goods on board, when the quantity and vessel are expressly designated, no case appears to have held that the supplyman may obtain a lien when he authorizes the owner to distribute the supplies among such of his fleet as he sees fit. In such a case, even though the owner must under the contract deliver the supplies to some ship, it is his decision that controls which ship it shall be. "Furnishing * * * supplies * * * to any vessel" must, we think, include that factor of choice; otherwise they are furnished to the owner. See The Fearless, 3 Cir., 14 F.2d 1006; The Cora P. White, 243 F. 246, D.C.N.J.

Maritime liens are "stricti juris and will not be extended by construction, analogy or inference." Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Co., 254 U.S. 1, 12, 41 S.Ct. 1, 4, 65 L.Ed. 97. Accordingly, we hold that no maritime lien arose in favor of the appellant. Order affirmed.