**WALTER E. HELLER & COMPANY,**
**Plaintiff,**

v.

**M/V MR. ED, her engines, tackle, furniture, etc., Defendant.**

**No. 8322.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Sept. 13, 1967.

---

**2.** The trial judge commented: "You see, this man knows how to put up some pretty good stories."

John William Futrell, New Orleans, La., for plaintiff.

Fritz H. Windhorst, New Orleans, La., for intervening claimant, Gator Supply Co.

RUBIN, District Judge:

On June 30, 1966, Walter E. Heller & Company (Heller) filed a libel, in rem, against the M/V MR. ED, to enforce a mortgage granted by the owner, J & M Equipment Rental, Incorporated. The vessel was seized and sold by the United States Marshal, and the net proceeds were deposited in the registry of the Court. Heller then filed a motion to have its mortgage declared a valid preferred ship mortgage under 46 U.S.C.A. § 922, to have judgment entered in the amount of its claim, and to have the net proceeds of $8,850.00, deposited in the registry of the Court, disbursed to it. In the meantime, interventions by various claimants, including Gator Supply Company, Incorporated (Gator Supply), were made in order to assert maritime liens.

On July 13, 1967, this Court held that Heller had acquired a valid preferred ship mortgage on the M/V MR. ED.[1] The Court gave intervening claimants the opportunity to file affidavits describing those maritime liens held by them which arose before July 13, 1965, the date on which Heller's mortgage was recorded. The Court further indicated that, should such affidavits be filed and should counsel be unable to agree on the ranking of liens, the matter was to be set down for determination by motion. One claimant, Gator Supply, has filed such an affidavit. Because the parties disagree on the ranking of the liens, the issue is now presented for decision by the Court.

Heller has filed a motion for judgment and disbursement of funds, urging that Gator Supply has no valid maritime lien. In addition, Heller contends that even if a valid maritime lien in favor of Gator Supply once existed, it is now barred by laches. But neither of Heller's arguments is well founded.

### EXISTENCE OF LIEN

46 U.S.C.A. § 971 provides, in part, as follows:

"Any person furnishing repairs, supplies * * * or other necessaries, to any vessel * * * upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel."[2]

---

1. Walter E. Heller & Company v. M/V MR. ED, her engines, etc., E.D.La., 1967, 270 F.Supp. 830.

2. Heller does not contend that the ordering of the goods was not properly authorized.

Gator Supply has shown by affidavit of its owner and by invoices filed with the court that between June 30, 1965 and July 12, 1965, it sold supplies and materials totaling $566.23 to J & M Equipment Rental, Incorporated to be used aboard the M/V MR. ED. Heller has presented no evidence to the contrary. In the absence of such evidence, it is a fair inference from the record as a whole that Gator Supply sold the goods for use on the M/V MR. ED and that they were used on that vessel.[3] In that event, the recognition of a lien in favor of Gator Supply is consistent with the approach suggested by Judge Gilliam in Davis v. United States Gas Screw Nola Dare,[4] in which the Court spoke as follows:

"If libelant shows upon a hearing that the supplies in question were in fact for the libeled vessel, and, in fact, reached it, and were such as are ordinarily required aboard such a vessel, and thus reasonably necessary to its operation, he is entitled to his lien, provided he also shows that they were furnished upon the order of the owner and master * * *."

▪ Cases relied on by Heller do not control the result here. Unlike the situation presented in *The Bethulia*,[5] the evidence in this case does indicate that the goods were ordered specifically for the vessel on which the lien is asserted. And to the extent that the Court in that case relied on the necessity for actual delivery by the vendor to the vessel itself in order to establish the lien, it is inconsistent with the generally expressed view,[6] and I reject it. Similarly, Piedmont and George's Creek Coal Co. v. Seaboard Fisheries Co.[7] does not compel the conclusion which Heller urges.[8] It has been said that the case is "all things to all men and is regularly cited on both sides of every case in which it is relevant."[9] However, in any event it does not appear to justify denying the lien when the supplies were, as here, furnished for the vessel upon the order of an authorized person. I therefore hold that Gator Supply obtained a valid maritime lien.

## LACHES

▪ I likewise reject the contention that laches bars the lien obtained by Gator Supply. Laches involves not only delay, but also prejudice resulting from that delay. The crucial issue in every case is "whether it would be inequitable, because of the delay, to enforce the claim."[10] The facts presented to the Court indicate that no prejudice to Heller has resulted from delay. I therefore find no inequity in enforcing its lien.

Since Gator Supply has a valid maritime lien which arose prior to the date on which Heller recorded its preferred ship mortgage, that lien ranks above that of Heller.[11] A decree will therefore be entered providing for distribution of the funds in the registry of the court in the following order: (1) $566.23 to Gator Supply; (2) the balance, or $8,283.77, to Heller.

The Clerk will prepare a judgment or decree in accordance with this opinion.

---

3. Cf. Jeffrey v. Henderson Bros., 4 Cir., 1951, 193 F.2d 589, 594.

4. E.D.N.C., 1954, 125 F.Supp. 677, 678.

5. D.C.Mass., 1912, 200 F. 876.

6. See, e. g., Jeffrey v. Henderson Bros., 4 Cir., 1951, 193 F.2d 589, 593–594; Bankers Trust Co. v. Hudson River Day Line, 2 Cir., 1937, 93 F.2d 457, 459; The Yankee, 3 Cir., 1916, 233 F. 919, 925; McKenzie v. The G/S Jim-Jet II, E.D.N.C., 1955, 133 F.Supp. 804, 807.

7. 1920, 254 U.S. 1, 41 S.Ct. 1, 65 L.Ed. 97.

8. See Gilmore and Black, The Law of Admiralty § 9–36 (1957). The authors observe, at page 547, that, "By the time [Mr. Justice Brandeis] had finished, not even the purest legal genius could have declared which of these multiple facts, or which combination of them, had resulted in the denial of lien."

9. Id. at page 547.

10. Czaplicki v. The S.S. Hoegh Silvercloud, 1956, 351 U.S. 525, 533, 76 S.Ct. 946, 951, 100 L.Ed. 1387, 1395.

11. See 46 U.S.C.A. § 921.