**CROFTON DIESEL ENGINE CO., Inc. et al.**
**v. PUGET SOUND NAT. BANK OF**
**TACOMA et al.**

No. 13225.

United States Court of Appeals
Ninth Circuit.

June 26, 1953.

Ekdale, Shallenberger & Toner, Arch E. Ekdale, Gordon P. Shallenberger and George E. Toner, San Pedro, Cal., for appellant.

Herbert R. Lande and Charles H. Kent, San Pedro, Cal., for appellee Puget Sound Nat. Bank.

Before STEPHENS and POPE, Circuit Judges, and McCORMICK, District Judge.

POPE, Circuit Judge.

This is an appeal from a final decree in admiralty which determined the relative priorities of certain valid maritime liens on the one hand and two mortgages on the other. The mortgages and liens were upon a fishing vessel, The Flying Cloud. Decree was in favor of the appellee Puget Sound National Bank of Tacoma, hereafter called the Bank, and against the appellants, herein called Crofton and Larson, holders of the maritime liens who, after the Bank had filed a libel for foreclosure of its two mortgages, filed libels in intervention.

The Bank took from the owners of The Flying Cloud as security for a note, a mortgage on the vessel which was entitled "Preferred Mortgage of Vessel". A ship building corporation took a similar mortgage to secure a note representing a part of the purchase price of the vessel. The latter mortgage was duly assigned to the Bank. Both mortgages were recorded and endorsed upon the vessel's documents, in accordance with the provisions of § 922 of Title 46 U.S.C.A.

About a year later, at San Pedro, California, the owners had some work done on the vessel by Larson and approximately six months thereafter Crofton did some engine work and furnished some supplies for it. To secure his claim Crofton took a mortgage which was designated "Third Preferred Mortgage". Later Larson did further work on the vessel for which he also claims a lien.

The owners having defaulted upon the Bank's notes, the latter filed suit to foreclose the mortgages. The vessel was sold and the proceeds deposited in the registry of the court. As the proceeds were insufficient to pay all mortgages and liens, a determination of their relative priorities was necessary.

Appellants challenge the standing of the Bank's two mortgages as preferred mortgages entitled to priority under the district court's decree on the ground that in each mortgage there appears the following provision: "But if default be made in such payments, or in any one of such payments, or if default be made in the prompt and faithful performance of any of the covenants herein contained, or if the said party of the second part shall at any time deem itself in danger of losing its debt * * * or if said first parties shall suffer and permit said vessel to be run in debt to an amount exceeding in the aggregate the sum of a *reasonable sum for strictly current operation and repairs to be kept currently paid within 30 days of the date incurred* * * * the second party is hereby authorized to take possession of said goods" etc. (The portion in italics indicates typewritten matter inserted in the printed form.)

The trial court found that both of the Bank's mortgages were executed, recorded and endorsed upon the documents of the vessel in compliance with law; that in each case the affidavit of good faith was filed with the record of the mortgage, and that each mortgage was made in good faith; that neither mortgage stipulated that it waived the preferred status thereof, and that one of the Bank's mortgages was a valid first preferred ship's mortgage and a first lien on the proceeds of sale of the vessel, and that the other was a valid second preferred ship's mortgage, and was a valid second lien on the proceeds of the vessel; that both such mortgages were entitled to priority ahead of the claims of the appellants.

Appellants say that the district court was in error because it failed properly to interpret and give effect to the clause in the mortgages which is quoted above. They contend first, that the quoted language constitutes a stipulation that the mortgagee waived the preferred status of the mortgage; and second, that the only reasonable interpretation of this provision is that the mortgagor in possession is thereby expressly authorized to incur liens, and unless the mortgagor was specifically prohibited by the mortgage from incurring liens, the appellant's maritime liens must prevail.

What constitutes a preferred mortgage upon a vessel is stated in § 922 of Title 46 U.S.C.A. It provides in general that the mortgage must be endorsed upon the vessel's documents in the manner provided in the section; that it must be recorded; that there must be an affidavit of good faith; and that the mortgagee be a citizen of the United States as defined by law. No question is raised but that the mortgages here satisfy those requirements. Subdivision 4 of the same section further states that the mortgage must satisfy the condition that "The mortgage does not stipulate that the mortgagee waives the preferred status thereof". § 953 recites that the lien of a preferred mortgage "shall have priority over all claims against the vessel" (with certain exceptions not applicable here).

The trial court was of the opinion that notwithstanding the mortgages contained the provision quoted above, and upon which appellants hang this appeal, the mortgages "did not stipulate that the mortgagee waived the preferred status thereof." In this we think that the district court was right. The quoted clause is clearly a condition subsequent which recites certain conditions which will permit the immediate enforcement and foreclosure of the mortgage. As pointed out in The Bergen, 9 Cir., 64 F.2d 877, 879, even where a preferred mortgage contains an express provi-

952

sion that the mortgagor shall have no right or power to impose upon the vessel any lien, the most that the provision contained in the mortgage could do was "to postpone the lien * * * to that of the holder of the preferred mortgage." In short, there is nothing incompatible about the simultaneous existence of a fully preferred mortgage and a lien for repairs and supplies. What the clause here in question did was simply to provide that if debt be incurred for the purposes mentioned, the obligation must be paid within thirty days; otherwise the mortgagee may forthwith move to foreclose. There is no reason here for holding that such language constituted a waiver within the meaning of § 922.

Appellants suggest that the Bank used antiquated forms, designed for use for vessels under 200 tons in the years before 1935 when the Act relating to preferred mortgages was amended to include such smaller vessels, (see historical note appended to 46 U.S.C.A. § 922), and that the quoted clause was used to give a measure of protection in these cases where preferred mortgages were impossible. They point to the Crofton mortgage as containing what "any well drawn preferred ship's mortgage" would have,—an express prohibition of liens. However praiseworthy that form is, it has not been prescribed by Congress. If, as appellants allege, the clause here in dispute was "at least ambiguous language" giving a "tacit permission" to impose a lien, the ambiguity, and the permission surely does not go to the extent of stating that such liens are to be prior to the mortgages.

■ This brings us to the second contention made, namely, that it was encumbent upon the Bank to insert in its mortgages an express and specific prohibition against the mortgagor incurring liens. Appellants arrive at this conclusion by arguing

that the mortgagor is in the same situation as a charterer, and they call attention to the charter party cases which hold that as between the charterer and the owner the charterer may create a valid lien, good against the vessel, unless the charter party contains an express prohibition against the charterer creating any such lien. Plenty of cases so hold. Dampskibsselskabet v. Ohio Oil Co., (cited as The Stjerneborg), 310 U.S. 268, 60 S.Ct. 937, 84 L.Ed. 1197; The South Coast, 251 U.S. 519, 40 S.Ct. 233, 64 L.Ed. 386; United States v. Carver, 260 U.S. 482, 43 S.Ct. 181, 67 L.Ed. 361.

We think that the appellant cannot make those decisions carry so much weight here. What is said in those cases arises out of the necessity of an interpretation of §§ 972 and 973 of Title 46. § 972 lists the persons who are presumed to have authority to procure repairs, supplies, etc. § 973 enlarges this by stating that such persons "shall be taken to include such officers and agents when appointed by a charterer * * but nothing in this chapter shall be construed to confer a lien when the furnisher knew, or * * * could have ascertained, that because of the terms of a charter party * * * the person ordering the repairs, supplies, or other necessaries was without authority to bind the vessel therefor." The cases thus relied upon by the appellant are no more than a construction and application of the language of these sections, and we see no reason for adding the requirements of a charter party prohibition stated in those cases to the statutory requirements of a preferred mortgage. What makes a preferred mortgage is a compliance with § 922 of Title 46. That compliance existed here. § 953 recites that "the preferred mortgage lien shall have priority over all claims against the vessel" except for certain types of liens not involved here.[1]

1. There is language in Morse Dry Dock & Repair Co. v. Northern Star, infra, which considered apart from the actual decision in that case, might lend some comfort to appellants. In speaking of a covenant in a ship's mortgage "not to suffer or permit to be continued any lien that might have priority over the mortgage," the court said: "The most that

such a contract can do is to postpone the claim of a party chargeable with notice of it to that of the mortgagee", and "So the question more precisely stated is whether the above-mentioned covenants postponed the lien to the mortgage security, as they would seem to do on the facts of the case but for the language of the statute that we shall quote." 271

953

We are therefore of the opinion that the decision of the district court upholding the priority of the Bank's mortgages was right. Accordingly, the judgment is affirmed.

U.S. 552, at pages 554, 555, 46 S.Ct. 589, at page 590, 70 L.Ed. 1082. The court then held that the statutory requirement that the mortgage be indorsed upon the vessel's documents was mandatory, and that since such indorsement had not there been made, the mortgage did not have preference. A reference to the separate opinion of Mr. Justice McReynolds, and to the opinion of the District Judge, The Northern Star, D.C., 295 F. 366, shows that one matter argued was that even although the mortgage may

not have been a preferred one, yet its holder should prevail because the quoted covenant prevented the owner from creating a lien. Thus the court had occasion to consider the effect of the covenant if used in a mortgage which failed to satisfy the statute. In view of the explicit language of § 953 we cannot attach to the court's reference to the question whether "the above-mentioned covenants" postponed the lien, the significance claimed by appellants.