Spencer C. BROCK et al., Libelants,

v.

S.S. SOUTHAMPTON, her boilers, engines, tackle, apparel, furniture, cargo and equipment, Respondent, and Companion and Consolidated Libels, Numbers 63-71, 63-77, 63-82, 63-83, 63-92, 63-94, 63-95, 63-96, 63-97, 63-127.

Civ. No. 63-53.

United States District Court
D. Oregon.
Jan. 30, 1964.

See also, 231 F.Supp. 278; 231 F. Supp. 283.

Erskine B. Wood, Wood, Wood, Tatum, Mosser & Brooke, Portland, Or., for libelants.

Curtis W. Cutsforth, King, Miller, Anderson, Nash & Yerke, Portland, Or., for claimant Israel Discount Bank, Ltd.

SOLOMON, Chief Judge.

Israel Discount Bank, Ltd. (Israel) seeks an order for $49,208.67 from funds now in the Registry of this Court from the sale of the SS Southampton.

Israel, by arrangement with Manuel Kulukundis, issued its irrevocable letter of credit for $400,000 to Seafarer's International Union of North America. The Union demanded this assurance before it would furnish crews for the fleets of A. H. Bull Steamship Co., Inc. (Bull) and Kulukundis Maritime Industries, Inc., (KMI) owner of the SS Southampton.

For this letter of credit, Israel received guarantees of reimbursement from Kulukundis, Bull, and KMI, together with a pledge of 46,819 shares of stock in Cargo Ships El Yam, Ltd., held by Kulukundis. Israel claims that it also relied on the credit of the vessel and is entitled to a maritime lien for $49,208.-67, the amount drawn against the letter of credit for payment of accrued wages and other compensation to the crew of the SS Southampton.

Alabama Dry Dock Co. (Alabama), a general creditor, opposes Israel's claim. Alabama contends that either Israel was

acting as agent of the ship's owner, in whose favor no maritime lien could arise, or it waived its right to a maritime lien by looking solely to the credit of the owner.

The letter of credit was the first transaction between Israel and Kulukundis, and there is no evidence that an agency relationship between them was created.

■ Israel issued its letter of credit to enable Kulukundis to obtain crews to operate the SS Southampton and other vessels of the fleet. Under the maritime theory of advances, one who pays the claim of a maritime lienor is entitled to the rights previously acquired by the lienor. Where, as here, the advance is to pay for necessaries, the advancer is entitled to a presumption that he made the payment in reliance on the credit of the vessel. 46 U.S.C.A. § 971.

■ Alabama has the burden of proving that Israel did not rely on the credit of the vessel or that Israel waived its right to a maritime lien. The mere taking of additional security, in and of itself, does not prove lack of reliance on the credit of the vessel, for it is well established that one who makes an advance for necessaries may look to both the credit of the owner and the credit of the vessel. The Little Charley, D.C.Md.1929, 31 F.2d 120. Point Landing, Inc. v. Alabama Dry Dock & Shipping Co., 5 Cir. 1958, 261 F.2d 861. Since no other evidence of non-reliance or waiver was offered, I find that Alabama failed to prove that Israel did not look to the credit of the vessel or that Israel waived its right to a maritime lien.

Alabama asserts that since the letter of credit covered the fleet generally and not the crew of the SS Southampton alone, Israel is not entitled to the benefits and protections of a maritime lien. Piedmont & George's Creek Coal Co. v.

Seaboard Fisheries Co., 254 U.S. 1, 41 S.Ct. 1, 65 L.Ed. 97 (1920). In that case, the supplier furnished coal to the owner of a fleet of vessels who stored it in his general storage bins. The owner used and had discretion to use the coal for either maritime or non-maritime purposes.

In the present case Israel issued its letter of credit, not to the owner, but to an agent of the crew, to assure payment of crews' wages and other compensation as these obligations arose. In fact, the letter of credit was drawn on, and wages and compensation paid, only after they were earned. Israel claims only the amounts paid to crew members of the SS Southampton.

I recently ordered paid the claim of Panagopulos and Associates, Inc. This claim involved a similar question. Panagopulos performed architectural services for the Kulukundis fleet, including the remodeling of the SS Southampton. It billed the fleet without specifying amounts due from services to specific vessels, and it received a partial payment of the entire bill. Proctors for certain creditors suggested that upon proof of the value of specific services to the SS Southampton, a percentage, corresponding to the percentage of the entire bill already paid by KMI, be deducted and the remainder · be considered as the amount due for services to that vessel. No one objected to this method of determining the amount of Panagopulos' claim against the SS Southampton or even to the allowance of the claim on the basis of the Piedmont Coal case.

■ In my opinion, the fact that the obligation was charged to the fleet as a whole rather than to the individual vessels should not defeat an otherwise valid maritime lien.

The claim of Israel Discount Bank, Ltd., will be allowed in the sum of $49,-208.67.