INTERNATIONAL PAINT COMPANY, INC., Plaintiff, Commercial Industrial Supply Company, Inc., Intervening Plaintiff,

v.

M/V MISSION VIKING, in rem, and A. Martin Industries, a Louisiana Corporation, Defendants.

Civ. A. No. 78-191-T.

United States District Court, S. D. Alabama, S. D.

Dec. 22, 1978.

J. George Whitfield, Jr., Mobile, Ala., for plaintiff.

G. Hamp Uzzelle, III, Mobile, Ala., for plaintiffs-intervenors, Alexander Industries & Mobile Ship Chandlery.

G. V. Parker, Rae M. Crowe and A. Danner, Frazer, Jr., Mobile, Ala., for defendants, M/V Mission·Viking, A. Martin Industries, Etc.

William S. Poole, Jr. and Michael G. Crow, Adams & Reese, New Orleans, La., for plaintiff-intervenor, Schlumberger, Ltd.

Abram L. Philips, Mobile, Ala., Walter Carroll, Jr., Terriberry, Carroll, Yancey & Farrell, New Orleans, La., for plaintiff-intervenor, Manufacturers Hanover Leasing Corp.

David A. Bagwell, Mobile, Ala., for plaintiff-intervenor, Gulf Welding Supply Co.

Gordon F. Wilson, Jr. and Douglas S. Draper, Dodge, Friend, Wilson & Spedale, New Orleans, La., for plaintiff-intervenor, Drilco, Division of Smith Intern.

John H. Stibbs, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for plaintiff-intervenor, Sub-Sea Systems, Inc. & Hydril Co.

Jack M. Alltmont, Sessions, Fishman, Rosenson, Snellings & Boisfontaine, New Orleans, La., Richard Bounds, Mobile, Ala., for plaintiff-intervenor, Foods & Services, Inc.

Joe N. Basenberg, Mobile, Ala., for plaintiff-intervenor, Gulf Engineering Co.

Frank G. Taylor, Mobile, Ala., for plaintiff-intervenor, Commercial Industrial Supply Co., Inc.

William S. Shulman, Mobile, Ala., for plaintiff-intervenor, ITT Mackay Marine, Div. of I T & T Corp.

G. Hamp Uzzelle, III, Mobile, Ala., for plaintiff-intervenor, Drew Chemical Corp.

## ORDER

DANIEL HOLCOMBE THOMAS, Senior District Judge.

This matter came on to be heard on November 6, 1978, on motion of plaintiff, Manufacturers Hanover Leasing Corporation (hereinafter MHLC) to establish priority of claims against the M/V MISSION VIKING. After oral arguments the matter was taken under submission.

On August 9, 1978, this Court adjudged that MHLC's mortgage on the vessel M/V MISSION VIKING was entitled to the status of a valid preferred ship mortgage under the provisions of the Ship Mortgage Act of 1920, 46 U.S.C. § 911, et seq. The Court ordered foreclosure of said mortgage and distribution to MHLC of proceeds from the sale of the vessel on the condition that MHLC would advance as proceeds of the sale such sums as might ultimately be awarded by the Court as court costs and in satisfaction of such claims as might be determined by the Court to be superior to the preferred ship mortgage held by MHLC. This Court is faced with the task of deter-

mining which claims, if any, are superior to MHLC's preferred ship mortgage.

## WAGES OF THE CREW

Generally a preferred ship's mortgage has priority over all claims against the vessel, except preferred maritime liens and expenses and fees allowed and costs taxed by the court. 46 U.S.C. § 953(b). Preferred maritime liens include, inter alia, liens "for wages of a stevedore when employed directly by the owner, operator, master, ship's husband, or agent of the vessel, and for wages of the crew of the vessel." 46 U.S.C. § 953(a).

Foods and Services, Inc. (hereinafter F&S) contend that its employees who were engaged in activities aboard the MISSION VIKING were members of the crew of that vessel and since F&S has paid the wages of those crew members for services rendered on the vessel, it is entitled to assert its claim as a seaman's lien for wages. F&S provides catering services to both vessels and land based establishments. Under the terms of the Catering Agreement, F&S employees are required aboard the vessel to act as cooks and kitchen helpers to prepare and serve meals for the operating crew of the vessel. In addition, F&S employees were required aboard the vessel for the purpose of maintaining the kitchen and the dining and living quarters. Based on the foregoing, this Court has no problem concluding that these employees were performing work which has traditionally be performed by seamen.

Concluding that F&S's employees were members of the crew, this Court now turns to the question of whether F&S, having paid the wages of the crew, is entitled to assert a wage claim and the Section 953 priority that goes along with such claims. Relying on *Coastal Dry Dock & Repair Corp. v. The S.S. Baybelle*, 1975 AMC 1736 (S.D.N.Y.1975), MHLC argues that no lien ever accrued to the employees of F&S since they were not directly employed by the vessel, and as such F&S cannot be subrogated to the rights that the employees never had. In *Baybelle*, the Visard Patrol Bu-

reau, a commercial guard service, under written contract with the owner of a vessel, assigned certain of its employees as guards aboard the vessel. Visard paid its employees, and when it was not paid by the owner of the vessel pursuant to the contract, it sought to advance its claim as one for the payment for crew's wages, in order to secure the status of preferred maritime lien. In holding that Visard did not have a preferred maritime lien for the wages it had paid its employees, the Court said in summary that:

[i]n the final analysis it is the fact that Visard was the employer and Visard's credit was relied upon by the employees, that controls this case. . . . *No lien ever accrued to the watchmen themselves since they were never employed by the ship, but by the libellants only*; (emphasis added)

.　　.　　.　　.　　.

Even if the watchmen are seamen, the fact remains that they looked to Visard, and not to the ship, for their pay. Had they relied on the credit of the vessel and looked to the captain or the owners for their pay, there is little doubt that the claims of their assignees could be subrogated to their rights. In the instant case the company fulfilled a function similar to that of an independent contractor supplying services, and as such it cannot be subrogated to rights that the watchman never acquired. 1975 A.M.C. 1746–47

Although conceding that *Baybelle* is directly analogous to the instant case, F&S argues that it was decided contrary to the language, intention and history of 46 U.S.C. § 953. Section 953 was originally enacted as part of the American Merchant Marine Act of 1920. That Act was a comprehensive revision of the Merchant Marine Law, restructuring much of the law which had accumulated by way of statutes and jurisprudence over the preceding years. Part of the Act spoke to the concept of the preferred ship mortgage and its position relative to traditional maritime liens. Basically it was the intention of the Congress to strengthen the ability of a ship owner to

obtain financing by creating a mortgage which would have a strong priority priming all but a limited list of competing claimants. This intention was well stated by the Senate Committee Report which explains:

"Mortgage security on ships is now practically worthless. We make it good except as to certain demands that should be superior to everything else, such as wages. We want our people and capital interested in shipping and shipping securities." Senate Report 573, 66 Congress, 2d Session (May 4, 1920) (p. 9).

The bill then being proposed by the Senate Committee then provided that all maritime liens (except a select few) would be subordinate to a duly recorded and certified maritime mortgage. The only liens which would not be subordinated to the mortgage would be:

"*liens for wages of crew and of stevedores when employed by the owner*, master, ship's husband, or agent of said vessel, general average and salvage, including contract salvage (which shall be known as preferred liens and rank among themselves as they now do under the maritime law) . . ." *Id.* at p. 19 (emphasis added).

Prior to the passage of the bill, the above quoted language of the Senate Report was amended in a manner most critically important in the case at bar. In the subsequently issued House Report, the critical language appears as follows:

"a lien for damages arising out of tort, *for wages of a stevedore when employed directly by the owner*, operator, master, ship's husband, or agent of the vessel, *for wages of the crew of the vessel*, for general average and for salvage, including contract salvage." H.R. Report No. 1107, 66 Congress, 2d Session (June 4, 1920) (P. 17) (emphasis added).

The language of the House Report is the language which ultimately became part of the bill and is the language which remains in § 953 of the law to this date.

The distinction between the language used in the Senate Report (which language was discarded) and the language used in the House Report (which was enacted into law) is most important in this case. Given the Senate Report language a stevedore or a crew wage claim constituted a preferred lien claim only where the stevedore or the crew member was directly employed by the ship. The House Report and the ultimate language of the statute specifically changed that language so that there was a distinction between the wage claim of a stevedore and a wage claim of a crew member. Under the revised language, a stevedore would have preferred status only if he was employed directly by the vessel. However, no such limitation was placed upon the claim of the crew member. The crew member was specifically liberated from the requirement that in order to have preferred status he would be employed directly by the vessel. This distinction, first made in the 1920 Act, was clearly not an accident. Such is abundantly clear from the above review of legislative history.

Furthermore, there was and is a very logical reason for making such a distinction between the wages of a stevedore and the wages of crew members. Clearly the crew members are more easily identifiable with the vessel whether or not they are directly employed by it. It is altogether reasonable that crew members be granted a wage lien against the vessel whether they are directly employed or not. Stevedores on the other hand do not have the same basic affiliation with the vessel. They basically work on the vessel in a limited sense. Lacking a direct employment relationship with the particular vessel, it is altogether reasonable that they not be given the same lien rights granted to seamen. Clearly this is the logical distinction made by the Congress in 1920 and that distinction remains in our law today.

■ A reading of the erroneous decision in the *Baybelle* case clearly indicates that that decision was reached in reliance upon the earlier decision in *The Seguranca*, 58 Fed. 908 (S.D.N.Y.1893). The *Seguranca* case was decided 27 years before enactment of 46 U.S.C. § 953—the statutory authority which must govern the issue in this case.

This being the case, it is clear that the court in *The Seguranca* did not consider the terms of the now-relevant statute simply because it was not on the books at that time. More interesting, however, is the fact that the court in *Baybelle* also apparently did not give consideration to the relevant statute, i. e., § 953. In fact a search of the court's opinion in the *Baybelle* case shows that in that decision, which runs some 12 pages, § 953 is neither quoted nor even cited by number. Clearly what the court did was consider the issue based upon an 82 year old case which had subsequently been legislatively overruled by the American Merchant Marine Act of 1920. The court gave absolutely no consideration to the change in the law affected by that statute. The decision in *Baybelle* is clearly erroneous and a misstatement of the law since 1920. Accordingly, This Court holds that a preferred maritime lien did arise in favor of the employees of F&S as members of the crew of the M/V MISSION VIKING and since F&S paid the claim of the maritime lienor, it is entitled to be subrogated to the rights acquired by its employees. *Brock v. S. S. Southampton*, 231 F.Supp. 280 (D.C. Or.1964); See also, *In Re SS Norberto Camay* and *SS Galicia Defender*, 171 A.M.C. 987 (N.D.Cal.1970); *Perusahaan Pelayaran Samudera Trikora Lloyd v. T.S. Salzachtal*, 373 F.Supp. 267 (E.D.N.Y.1974).

## WAIVER OF THE PREFERRED SHIP MORTGAGE

It is the contention of F&S in which all other claimants join, that notwithstanding the preferred status of the first ship mortgage, by the terminology of Section 4, Paragraph 4.1 of the mortgage MHLC has made a pro-tanto waiver of its preferred status up to, but not exceeding $100,000. Paragraph 4.1 provides in relevant part, the following:

> "4.1  *Liens.* The owner will not nor will it permit any charterer, Master of the Vessel or any other Person, to create, incur, assume, or suffer to exist any Lien on the Vessel or any part thereof except .  .  .  (d) Liens for crew's wages and

salvage (including contract salvage), (e) Liens incident to current operations aggregating not in excess of $100,000.00 (except for crew's wages and salvage) .  .  ."

F&S contends that by including this provision in the mortgage, the mortgagee, MHLC, has waived the preferred status of the mortgage to the extent of $100,000 for current operations. This specific contention has been addressed by at least two different Courts and with different results.

MHLC urges this court to adopt the holding of *Crofton Diesel Engine Co. v. Puget Sound National Bank of Tacoma*, 205 F.2d 950 (9th Cir. 1953). In *Crofton*, there was a portion of the mortgage that enumerated events of default, the occurrence of which triggered the mortgagee's right to declare in default the mortgage, which read in part as follows:

> Or if said parties shall suffer and permit said vessel to be run in debt in an amount exceeding in the aggregate the sum of a *reasonable sum for strictly current operation and repairs to be kept currently paid within 30 days of the date incurred .  .* the second party is hereby authorized to take possession of said goods.  205 F.2d at 951.

In seeking to advance the priority of their liens the supply people in *Crofton* unsuccessfully argued to the court that this provision constituted by implication a waiver, within the meaning of 46 U.S.C. § 922, which provides in part that .

> [a] valid mortgage  .  .  .  .  shall  .  .  . have  .  .  .  .  the preferred status given by the provisions of Section 953 of this title if  .  .  .  .  [t]he mortgage does not stipulate that the mortgagee waives the preferred status thereof.

While this court agrees with the holding in *Crofton* which found that the above provision "did not stipulate that the mortgagee waived the preferred status thereof", the provision immediately before the court is distinguishable. In *Crofton* that provision was held to be a "condition subsequent which recite[d] certain conditions which will permit the immediate enforcement and

foreclosure of the mortgage." (205 F.2d at 951). This Court declines to give such an interpretation to the instant provision.

■ Paragraph 4.1 is more akin to a clause contained in the preferred ship mortgage at issue in *The Henry W. Breyer*, 17 F.2d 423 (D.C.Md.1927). In that case, a coal supplier contended that its claim for payments due for those fuel suppliers should have priority over the preferred ship mortgage because of a tacit waiver of priority contained in the mortgage. In specifically holding for the coal company, the court first quoted the provision

> " 'That neither the mortgagor nor the master of the vessel, nor any one acting in its or his behalf, has or shall have any right, power, or authority to create, incur, or permit to be placed or imposed upon the vessel, or any party thereof, subject to this mortgage, any liens whatsoever other than for crew's wages, supplies, or salvage.'
>
> "Obviously this section clothed the mortgagor or master of the vessel with power to create an indebtedness for supplies, and to subject the vessel to a lien therefor. *The master was thereby enabled, wherever the vessel might be, to pledge her credit, not only to raise money to pay the crew, but also to buy the necessary supplies. Moreover, in order to make this authority practically effective, the lien was intended to have priority over that of the mortgage.* The authority to purchase supplies is grouped in the same clause with the authority to impose liens upon the vessel of wages or salvage, which, under the Ship Mortgage Act, give rise to preferred maritime liens. It is therefore a fair conclusion that the parties to the mortgage intended to put all three liens in the same category. Subsection S of section 30 of the act (Comp. St. § 8146¼ ppp) provides that nothing in section 30 of the act shall be construed to prevent the mortgagee from waiving his right to a lien or, in the case of a preferred mortgage lien, to the preferred status of such a lien at any time by agreement or otherwise. (Emphasis added)

> "The tacit permission given by the mortgagee to the imposition of a lien on the ship for supplies is pro tanto a waiver on the part of the mortgagee of the preferred status of the preferred mortgage lien." 17 F.2d at 432

This Court approves the holding in *The Henry W. Breyer* and holds that Paragraph 4.1 of the ship mortgage in question does waive the preferred status of the mortgage to the extent of $100,000 in favor of those parties asserting claims incident to current operation. However, Paragraph 7.4 provides:

> *No Waiver of Preferred Status*
>
> No provision of the Mortgage shall be deemed to constitute a waiver by the mortgagee of the preferred status hereof given by the Ship Mortgage Act, 1920, as amended, and any provision of the mortgage which would otherwise constitute such a waiver shall to such extent be of no force or effect.

Paragraph 4.1 and 7.4 are in direct conflict with each other and create a latent ambiguity in the mortgage. In applying general rules of construction of a written instrument this Court resolves the ambiguity against MHLC, the maker of the instrument, and holds that MHLC was waived the preferred status of the mortgage to the extent of $100,000 in favor of claims incident to current operations.

It is therefore ORDERED, ADJUDGED and DECREED that the claim by F&S for seamen's wages is a preferred maritime lien within the meaning of 46 U.S.C. § 953(a) and is superior to the preferred ship mortgage held by MHLC.

It is FURTHER ORDERED, ADJUDGED and DECREED that MHLC has waived the priority of its mortgage to the extent of $100,000 in favor of persons furnishing necessaries for current operation.

Judgment will be entered forthwith pending a complete determination of the sufficiency of all claims and costs. A hearing to determine such is set for 1:30 p.m. on the 3rd day of January 1979.