FLEXIVAN LEASING, INC., Genstar Container Corporation, Interpool Limited, Itel Containers International Corporations, Nautilus Leasing Services, Inc. and Transamerica ICS, Inc., Plaintiffs,

v.

M/V C.C. SAN FRANCISCO, her engines, tackle, apparel, furniture and fixtures, in rem, Defendants,

The VESSEL C.C. SAN FRANCISCO, Garnishee.

Nos. CV 84–6331–JWC, CV 84–6175–JWC, CV 84–6243–JWC and CV 84–6289–JWC.

United States District Court, C.D. California.

Aug. 20, 1985.

Robert E. Hawkins, Overton, Lyman & Prince, Los Angeles, Cal., for Flexivan Leasing, Inc.

**1078**

Reed M. Williams, Graham & James, Long Beach, Cal., for Genstar Container Corp. and Itel Containers Intern. Corp.

Ben Suter, Keesal, Young & Logan, Long Beach, Cal., for Nautilus Leasing Services, Inc. and Transamerica ICS, Inc.

David S. Porter, Fisher, Porter & Kent, Long Beach, Cal., for Interpool, Ltd.

David E.R. Woolley, Lillick, McHose & Charles, Los Angeles, Cal., for M/V C.C. San Francisco.

## ORDER RE PLAINTIFFS' SUMMARY JUDGMENT MOTION TO ESTABLISH MARITIME LIEN

CURTIS, District Judge.

### INTRODUCTION

On July 1, 1985, in response to defendant Char Yigh Marine (Panama) S.A.'s Renoticed Motion to Compel Plaintiffs *In Rem* to Justify Maritime Arrests, this Court found that the *in rem* arrests of the vessell "CC San Francisco" by the container lessor plaintiffs were colorably valid, thereby validating this Court's continued admiralty jurisdiction over the claims. The Court therefore ordered the matter to proceed, and requested that the container claimants submit motions for summary adjudication under FRCP 56 as to all issues regarding the *in rem* claims which are not subject to substantial controversy.

The Court now has before it summary judgment motions brought by the container claimants seeking to establish, as a matter of law, that the containers provided to "CC Lines" give rise to maritime liens. This opinion governs the motions of Flexi-van Leasing, Inc. (CV 84–6331), Genstar Container Corporation (CV 84–6175), Interpool Limited (CV 84–6243), Itel Containers International Corporation (CV 84–6175), Nautilus Leasing Services, Inc. (CV 84–6289), and Transamerica ICS, Inc. (CV 84–6289). Although the facts and contracts relied upon differ slightly from case to case, they each present this same question of law. Rather than discussing the specific facts of each case, this order respectively adopts and incorporates by reference the Statements of Uncontroverted Facts and Conclusions of Law submitted concurrently by each of the container claimants with their motions.

### DISCUSSION

In this *in rem* action, plaintiffs seek to confirm that they have maritime liens for necessaries based on containers furnished to the vessel "CC San Francisco." Plaintiffs further seek to establish that the lien encompasses all periods the containers served as the "functional equivalent" of the vessel's hold, including incidental land uses.

 The governing statute is the maritime lien statute, 46 U.S.C. § 971. It provides:

> "Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel."

The first requirement for a maritime lien under § 971 is that the container or equipment be a "necessary." A "necessary" is any item furnished to a vessel which is reasonably necessary for the venture in which that particular ship is engaged. *Clubb Oil & Tools, Inc. v. M/V George Vergottis*, 460 F.Supp. 835, 841 (S.D.Tex. 1978). Containers are portable receptacles in which large numbers of smaller packages may be transported. They are the modern substitute for the hold of the vessel. *Leather's Best, Inc. v. Mormaclynx*, 451 F.2d 800, 815 (2nd Cir.1971). It is clearly established that containers are necessary to a container ship's operation. *Nautilus Leasing Services, Inc. v. M/V Cosmos, et al.*, 1983 AMC 1483 (S.D.N.Y. 1983); *Transamerica ICS, Inc., v. M/V Panatlantic*, 1984 AMC 489 (S.D.Fla.1983). Since the "CC San Francisco" carried only

containerized cargo while in the service of the "CC Line," containers were more than reasonably necessary for her operation.

■ The second requirement, and the one around which this controversy is centered, is that the containers be "furnished to" the "CC San Francisco." It is undisputed by the parties that the containers were supplied by the container claimants to "CC Lines" for use in its transpacific shipping service between various ports in the Far East and the West Coast of the United States.

However, because the containers were not supplied to the "CC San Francisco" specifically, defendant argues that the "furnishing to any vessel" requirement has not been met. Plaintiffs, on the other hand, submit that by furnishing containers to "CC Lines" for exclusive use on board its fleet of container vessels, and by virtue of their actual use on board the "CC San Francisco," plaintiffs furnished containers to the vessel within the meaning of 46 U.S.C. § 971. The Court agrees with plaintiffs.

The use of containers in shipping has been characterized as "one of the most important technological developments in the transportation of goods by sea since steam replaced sail." Simon, *The Law of Shipping Containers*, 5 J.Mar.L. & Com. 507 (1974). *See also CTI-Container Leasing v. Oceanic Operations*, 682 F.2d 377, 380 (1982). The Supreme Court has recognized how containerization has revolutionized maritime cargo-handling techniques, noting that

> "containerization permits the time-consuming work of stowage and unstowage to be performed onland in the absence of the vessel. The use of containerized ships has reduced the costly time the vessel must be in port and the amount of manpower required to get the cargo onto the vessel."

*Northwest Marine Terminal Co. v. Caputo*, 432 U.S. 249, 270, 97 S.Ct. 2348, 2360, 53 L.Ed. 320 (1977) (footnote omitted).

One of the key advantages of containers is that they allow the use of several different modes of transportation—marine, motor, rail, or air—to transport goods on a door to door basis. *See* Tombari, *Trends in Oceanborne Containerization and its Implications for the U.S. Liner Industry*, 10 J.Mar.L. & Com. 311 (1979). As the evidence in this case indicates, containers are routinely leased by shipping lines without specification as to the exact vessel on which they may be used. In fact, a container can be used on several different vessels during the duration of its lease. In light of today's shipping practices, defendant's contention that a container need be furnished to a specific vessel, rather than to a fleet of vessels, in order for a valid maritime lien to exist, is highly impractical. In addition, and most importantly, it is unsupported by the law.

The delivery of necessaries to a fleet of vessels gives rise to a maritime lien to the extent the necessaries in fact were placed on individual vessels in the fleet. Moreover, those necessaries can be supplied to a fleet pursuant to a single contract. *Dampskibsselskabet Dannebrog v. Signal Oil & Gas Co. of California*, 310 U.S. 268, 276–77, 60 S.Ct. 937, 941–42, 84 L.Ed. 1197 (1940); *Brock v. SS Southhampton*, 231 F.Supp. 280, 282 (D.Ore.1964); *Jeffrey v. Henderson Bros., Inc.* 193 F.2d 589, 593–94 (4th Cir.1951). In *Transamerica ICS Inc. v. M/V Panatlantic*, 1984 A.M.C. 489 (S.D. Fl.1983), the court found that defendant's vessel's containers were "necessaries," and also noted that the requirement that such necessaries be "furnished to" a vessel does not require direct delivery on the basis of separate contracts for each vessel. The court stated:

> "After reviewing the history and operation of the container leasing business as explained by plaintiffs, the Court is convinced that containers are "necessaries" within the meaning of 46 U.S.C. sec. 971. Furthermore, for purposes of creating a valid maritime lien, it may not be essen-

**1080**

tial, and indeed may not be desirable, that the container be delivered directly to the vessel, be sold rather than leased, or be earmarked for a particular vessel. ... [T]he Supreme Court has noted how the courts and Congress have accommodated maritime law to modern cargo-handling techniques. *Northeast Marine Terminal Co., Inc. v. Caputo,* 432 U.S. 249, 268–72, 97 S.Ct. 2348, 2359–61, 53 L.Ed.2d 320, 1977 AMC 1037, 1051–55 (1977)."

In light of the above authority, and consistent with modern shipping practices, the Court holds that the delivery of containers to a fleet of vessels, without specification as to a specific ship, does not defeat a maritime lien where the actual use of those containers aboard a specific ship can be proved.

■ Defendant also raises several additional arguments as to why plaintiffs should be denied their maritime lien. Suffice it to say, however, that at oral argument, defendant admitted that its main legal argument concerns lack of delivery to a specific ship, and that the rest of the arguments raised were "fluff." Thus, without going into the specifics of those arguments for purposes of their rejection in this opinion, the Court hereby holds (1) that the plaintiffs' container leases with "CC Line" are maritime contracts; (2) that plaintiffs' containers served as the functional equivalent of the hold of the "CC San Francisco" and are therefore "necessaries" within the meaning of 46 U.S.C. § 971; (3) that plaintiffs "furnished" containers to the "CC San Francisco" within the meaning of 46 U.S.C. § 971; (4) that plaintiffs have valid maritime liens for necessaries against the vessel "CC San Francisco" for all containers carried aboard that vessel; and (5), that the maritime lien encompasses all periods plaintiffs' containers served as the functional equivalent of the hold of the "CC San Francisco," including incidental land use. Proof of plaintiffs actual damages under their maritime liens await further proceedings.