**BOLLINGER QUICK REPAIR, INC., Plaintiff,**

v.

**M/V GOLIATH, Official No. 553457, her engines, tackle, equipment, and appurtenances, in rem; Gilco Construction Co., in personam, Defendants.**

**KeyCorp Leasing Ltd.; Dennis Brindle; Cascade General, Inc.; and Jones Stevedoring Co., Claimants–Intervenors.**

**Civil No. 95–2001–ST.**

United States District Court, D. Oregon.

Jan. 28, 1997.

Kerry J. Shepherd, Bogle & Gates, Portland, OR, for Bollinger Quick Repair Inc.

John R. Dudrey, Williams Fredrickson Stark & Weisensee PC, Portland, OR, for Dennis Brindle.

Daniel F. Knox, Schwabe Williamson & Wyatt, Portland, OR, for M/V Goliath.

Joseph M. Van Leuven, Richard J. Schroeder, Davis Wright Tremaine, Portland, OR, for Keycorp Leasing Ltd.

Darien S. Loiselle, Schwabe Williamson & Wyatt, Portland, OR, for Jones Stevedoring Co.

Guy C. Stephenson, Schwabe Williamson & Wyatt, Portland, OR, for Cascade General Inc.

## ORDER

FRYE, District Judge:

The Honorable Janice M. Stewart, United States Magistrate Judge, filed Findings and Recommendation on December 20, 1996. The matter is before this court. *See* 28 U.S.C. § 636(b)(1)(B) and Fed.R.Civ.P. 72(b). No objections have been timely filed. This relieves me of my obligation to give the factual findings *de novo* review. *Britt v. Simi Valley Unified School Dist.*, 708 F.2d 452, 454 (9th Cir.1983). Having reviewed the legal principles *de novo*, I find no error. Accordingly, I ADOPT the Findings and Recommendation of Magistrate Judge Stewart dated December 20, 1996 in its entirety.

IT IS HEREBY ORDERED that the Motion for Partial Summary Judgment by Jones Stevedoring Company (# 69) is GRANTED, and KeyCorp Leasing Ltd.'s Motion for Partial Summary Judgment on Question of Stevedore's Lien (# 71) is DENIED.

## FINDINGS AND RECOMMENDATIONS

STEWART, United States Magistrate Judge.

### *INTRODUCTION*

On December 22, 1995, plaintiff, Bollinger Quick Repair, Inc. ("Bollinger"), filed this action *in rem* against the M/V GOLIATH, and *in personam* against Gilco Construction Co.

("Gilco"), the former owner of the GOLIATH, in order to collect $55,019 in monies allegedly owed to Bollinger as a result of repairs and materials provided by Bollinger to the GOLIATH in July 1995. Several parties subsequently intervened including: (1) KeyCorp Leasing Ltd. ("KeyCorp"), which holds a preferred marine mortgage interest in the GOLIATH; (2) Jones Stevedoring Company ("Jones Stevedoring"), which claims a maritime lien based on stevedoring services provided in September 1995; (3) Dennis Brindle ("Brindle"), the former master of the GOLIATH, who allegedly is owed unpaid wages and damages for injuries he sustained while in service of the GOLIATH on August 7, 1995; and (4) Cascade General, Inc. ("Cascade"), which provided moorage services to the GOLIATH commencing December 12, 1995.

On March 18, 1996, this court entered an Order directing release of the GOLIATH to KeyCorp pursuant to a Stipulation between Bollinger, KeyCorp, and all other intervenors. A default judgment was entered in favor of Bollinger on April 4, 1996. That default judgment was subsequently assigned to KeyCorp on April 17, 1996.

Now before the court are: (1) the Motion for Partial Summary Judgment by Jones Stevedoring Company (docket # 69); and (2) KeyCorp's Cross-Motion for Partial Summary Judgment on Question of Stevedore's Lien (docket # 71). Jones Stevedoring and KeyCorp each seek a determination of whether Jones Stevedoring is entitled to a maritime lien under the Federal Maritime Lien Act ("FMLA"), 46 U.S.C. § 971, recodified at 46 U.S.C. §§ 31341–43. For the reasons that follow, this court finds that Jones Stevedoring is entitled to a maritime lien under the FMLA and therefore recommends that Jones Stevedoring's motion be granted, and KeyCorp's motion be denied.

### UNDISPUTED FACTS

The following undisputed facts are extracted from the parties' statements of facts in their briefs:

1. Gilco, a manufacturer of buildings in Washington state, contracted with the Department of Housing and Urban Development to install manufactured housing units onto certain Indian lands in Alaska.

2. Gilco chose to transport the housing units to Alaska by means of ocean towage and purchased the tugboat GOLIATH specifically for that purpose.

3. The GOLIATH had no decks or cargo holds of its own and, as a result, was physically incapable of independently transporting the housing units. Gilco therefore chartered two barges, the BISMARK and the ZB–335, to hold the housing units. The barges were unmanned, passive tows which had no motive power of their own.

4. Gilco hired Jones Stevedoring to load and lash the housing units for towage to Seattle. Both Gilco and Jones Stevedoring clearly understood that the GOLIATH would perform the towage.

5. The barges were berthed alongside the GOLIATH during the loading process. After Jones Stevedoring completed loading the barges, the barges were connected to the GOLIATH and taken in tow to Alaska.[1]

6. Jones Stevedoring claims it is still owed over $86,000, plus interest, costs, and attorney fees, as a result of its loading services.

### DISCUSSION

#### I. *Issue Presented*

These motions involve a single, narrow issue, namely, whether the stevedoring services provided by Jones Stevedoring qualify for a maritime lien against the GOLIATH under 46 U.S.C. § 31342(a)(1) which states that a person "providing necessaries to a vessel on the order of the owner or a person authorized by the owner ... has a maritime lien on the vessel." Persons having such a lien may bring a civil action *in rem* to enforce the lien and are not required to allege or prove in the action that credit was given to the vessel. 46 U.S.C. § 31342(a)(2) and (3). It is undisputed that Jones Stevedoring can

---

1. Nothing in the record reveals how long a period passed between the time Jones Stevedoring completed its services loading the housing units and the time the barges were connected to the GOLIATH and taken in tow to Alaska.

assert a lien against the two barges. The only question is whether Jones Stevedoring can also assert a lien against the tugboat which transported the barges.

Gilco and Jones Stevedoring both contemplated that Jones Stevedoring would load the housing units, the barges would then be connected to the GOLIATH, and then the entire unit would proceed to Alaska. It is undisputed that this is exactly what transpired.

Jones Stevedoring argues that the intent of the parties, combined with the practical realities and physical limitations of both the GOLIATH and the barges should control. Because the GOLIATH could not transport the housing units without the barges—and *vice versa*—Jones Stevedoring's services inured to the benefit of(*i.e.* were "provided to") both. Consequently, Jones Stevedoring is entitled to a maritime lien against the GOLIATH, as well as the barges.

KeyCorp argues that the intent of the parties, as well as the fact that the GOLIATH and the barges actually traveled to Alaska as a unit, are irrelevant. According to Key-Corp, the only pertinent question is on which specific vessel Jones Stevedoring performed "physical tangible services." Because the stevedores "provided loading services to and on the two barges—not to the tugboat" and "did not in any way come into contact with, provide services to, or deliver services on the tugboat," KeyCorp seeks to limit Jones Stevedoring to a maritime lien against the two barges. KeyCorp's Response to Motion for Partial Summary Judgment, p. 6.

Neither party has cited, nor has this court found, a case that has upheld or denied a lien to a stevedore against a tugboat for stevedoring services performed on a barge.[2] The determination of this novel issue ·requires this court to interpret the statutory clause "providing necessaries to a vessel." Thus, it is appropriate to begin the analysis by referring to the applicable rule of construction.

## II. *The Doctrine of Stricti Juris*

■ KeyCorp argues that Jones Stevedoring's claim to a maritime lien is precluded by the doctrine of *stricti juris*. The doctrine prohibits the recognition of "new forms" of maritime liens and restricts maritime liens to " 'those created by statute and those historically recognized in maritime law.' " *Logistics Mgmt., Inc. v. One (1) Pyramid Tent Arena,* 86 F.3d 908, 913 (9th Cir.1996), quoting *Melwire Trading Co., Inc. v. M/V CAPE ANTIBES,* 811 F.2d 1271, 1273 (9th Cir.1987).

■ *Stricti juris* is premised on the potential for prejudice to other creditors that maritime liens pose by virtue of the fact that they are "secret" to all but the immediate parties:

> Because the maritime lien [of the FMLA] is secret and may operate to the prejudice of prior mortgagees and other creditors without notice, it will not be "extended by construction, analogy or inference."

*Foss Launch & Tug Co. v. Char Ching Shipping U.S.A., Ltd.,* 808 F.2d 697, 702 (9th Cir.), *cert denied,* 484 U.S. 828, 108 S.Ct. 96, 98 L.Ed.2d 57 (1987) ("*Foss* "), quoting *Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Co.,* 254 U.S. 1, 12, 41 S.Ct. 1, 4, 65 L.Ed. 97 (1920); *see Melwire,* 811 F.2d at 1273, quoting *Osaka Shosen Kaisha v. Pacific Export Lumber Co.,* 260 U.S. 490, 499, 43 S.Ct. 172, 174, 67 L.Ed. 364 (1923).

KeyCorp opines that the doctrine of *stricti juris* makes this case extremely simple. A barge, like a tugboat, is a "vessel." The barges on which the housing units were loaded are the only "vessels" with which Jones Stevedoring's employees had any physical contact. Therefore, the barges are the only vessels to which Jones Stevedoring can claim it provided any necessary services. According to KeyCorp, any broader interpretation would create a new type of lien not contemplated by the FMLA, and therefore is not permitted by the doctrine of *stricti juris*.

There is no question that Jones Stevedoring is entitled to a maritime lien for its

---

2. KeyCorp submits that no court has been called upon to decide this issue simply because a stevedore is so clearly *not* entitled to a lien under these circumstances. There are numerous other reasons this issue may not yet have been litigated and this court does not deem the paucity of identical case law as dispositive.

stevedoring services which "are categorized as 'necessaries.'" *Atlantic & Gulf Stevedores, Inc. v. M/V GRAND LOYALTY*, 608 F.2d 197, 201 (5th Cir.1979) ("*GRAND LOYALTY*"). Instead, this case involves the breadth of the clause "providing necessaries *to a vessel.*" Does the clause contemplate allowance of a lien against a tugboat (the GOLIATH) for services performed loading cargo on a tow (the barges) which all parties clearly understood would be connected to the tugboat and transported to another location by the tugboat's motive power?

In deciding this issue, this court is mindful that *stricti juris* requires a "technical and precise" interpretation of provisions creating maritime liens. *International Seafoods of Alaska, Inc. v. Park Ventures, Inc.*, 829 F.2d 751, 753 (9th Cir.1987) (citations omitted). However, a "technical and precise" interpretation does not require the narrowest interpretation possible:

> [T]he rule of strict construction is not violated by permitting the words of a statute to have their full meaning, or the more extended of two meanings. The words are not bent one way or the other, but to be taken in the sense which will best manifest the legislative intent.

*Sacramento Nav. Co. v. Salz,* 273 U.S. 326, 329–30, 47 S.Ct. 368, 369–70, 71 L.Ed. 663 (1927) ("*Salz* ").

The specific issue presented in this case has not been definitively answered. However, under the unusual facts presented here, this court is persuaded that Jones Stevedoring's lien claim against the GOLIATH falls within the language of the statute and the reasoning of the Ninth Circuit. Moreover, this court finds that disallowing a maritime lien to Jones Stevedoring based on the undisputed facts of this case would require this court to ignore the purposes of the FMLA, view the services performed by Jones Stevedoring in a tightly sealed vacuum, and disregard the clear intent of the parties at the time the services were performed, as well as

the actual facts of what occurred. The doctrine of *stricti juris* does not require the court to turn a blind eye to these considerations and this court therefore recommends recognition of Jones Stevedoring's claim to a maritime lien against the GOLIATH.

### III. *The Container Cases and "Earmarking" Doctrine*

KeyCorp argues, based on a line of cases involving container leases, that Jones Stevedoring's services were not provided to or "earmarked for" the GOLIATH. In particular, KeyCorp argues that the Ninth Circuit's decision in *Foss, supra,* applying the "earmarking" doctrine controls this case and mandates a finding that Jones Stevedoring is not entitled to a maritime lien against the GOLIATH.

In *Foss,* container boxes ("containers") which were substantially uniform in design and construction and designed for intermodal transportation, were leased to a company ("the carrier") that operated a fleet of container ships under a series of separate lease agreements. The containers were to be used in connection with the carrier's transpacific shipping service and were delivered at different times and in a variety of locations, including delivery at the lessor's container depots and the carrier's container yards. One or more of the containers was used on board one of the carrier's vessels, the "C.C. SAN FRANCISCO," for the transport of ocean cargo. The lessor had the vessel arrested and sought to enforce a maritime lien against it.

The district court held that the lessor had an enforceable maritime lien. *Flexivan Leasing, Inc. v. M/V C.C. SAN FRANCISCO,* 628 F.Supp. 1077, 1080 (C.D.Cal.1985) (subsequent history omitted). The Ninth Circuit reversed. While the Ninth Circuit agreed that the containers were "necessaries" within the contemplation of the FMLA, it determined that the "furnishing" requirement of the FMLA (now the "providing" requirement) [3] was not met. *Foss,* 808 F.2d at 700.

---

**3.** No substantive change was intended by the amendment which changed the operative verb: " 'Providing' has been substituted for 'furnishing' for consistency with other laws. This section makes no substantive change to law." HR Rep No 918, 100th Cong, 2nd Sess 1988, *reprinted in*

1988 USCCAN 6104, 6107, 6141. *See Silver Star Enterprises, Inc. v. M/V SARAMACCA,* 82 F.3d 666, 668 n. 2 (5th Cir.1996) (citing the House Report and noting that most of the cases in this area arose under the "furnishing" version of the

The court reviewed *Piedmont, supra, Dampskibsselskabet Dannebrog v. Signal Oil & Gas Co.,* 310 U.S. 268, 60 S.Ct. 937, 84 L.Ed. 1197 (1940), and *Bankers Trust Co. v. Hudson River Day Line* 93 F.2d 457 (2nd Cir.1937), and concluded that "cargo containers leased in bulk to a time-charterer of a group of vessels for unrestricted use on board the vessels in that group, are not furnished to any particular vessel of the group, on which they subsequently happen to be employed, within the meaning of [the FMLA]." *Foss,* 808 F.2d at 703.

Contrary to KeyCorp's argument, *Foss* does not negate Jones Stevedoring's claim to a maritime lien. The central holding of *Foss* was that the "furnishing" requirement of the FMLA must be narrowly interpreted. Where containers were not designated or earmarked for use on a specific vessel, the supplier of those containers could not simply lien the vessel on which the containers had actually been used. The decision hinged on the fact that the containers were delivered to the carrier without any attempt to designate a particular container for use on a particular vessel. The court repeatedly cautioned that the "furnishing" requirement meant "active forethought or advance identification of particular vessels in relation to 'necessaries' supplied." *Id.* at 701. Drawing a comparison to *Piedmont,* the court explained that

> In each case a materialman provided bulk supplies—coal in *Piedmont,* containers here—in circumstances where the final allocation of supplies, to any vessel of the group to be supplied, was left to the final discretion of the procuring authority.... [I]n neither case was there any evident attempt to designate any individual vessel to receive any identifiable component of the supplies.

*Foss,* 808 F.2d at 702.

The cases discussed in *Foss* contain similar language indicating that a lien against a vessel may be appropriate where the services or supplies are designated for, and in fact are used by, the particular vessel. For example, in *Piedmont,* the court noted:

> In the case at bar there was no understanding when the contract was made, or when the coal was delivered by the libelant, that any part of it was for any particular vessel or even for the vessels then composing the fleet. And it was clearly understood that the purchasing corporation would apply part of the coal to a nonmaritime use.

*Piedmont,* 254 U.S. at 13, 41 S.Ct. at 4–5.

Similarly, the Second Circuit stated that:

> [T]he requirements for a maritime lien are met, "if the supplies, though delivered in mass to the owner of the fleet under a single contract, are expressly ordered by the owner and delivered to him by the supplyman for the use of named vessels in specified portions, and are promptly delivered to the named vessels by their owner."

*Bankers Trust Co. v. Hudson River Day Line,* 93 F.2d 457, 458 (2nd Cir.1937), quoting *THE AMERICAN EAGLE,* 30 F.2d 293, 295 (D.C.Del.1929).

In describing the general teaching of *Piedmont* and its progeny, the Fourth Circuit stated:

> Following *Piedmont,* courts consistently have held that a supplier claiming a maritime lien against a vessel must, *inter alia,* have delivered needed supplies directly to the vessel *or somehow earmarked the supplies for use on that particular vessel.*

*Redcliffe Americas Ltd. v. M/V TYSON LYKES,* 996 F.2d 47, 50 (4th Cir.1993) (emphasis added), *citing Dampskibsselskabet* ; *Bankers Trust* ; and *THE AMERICAN EAGLE.*

The cases denying a maritime lien have uniformly involved situations where there was insufficient evidence that the supplies or services provided to a location other than the vessel had in fact been earmarked for the vessel. *See, e.g., Itel Containers Int'l Corp. v. Atlanttrafik Express Serv. Ltd.,* 982 F.2d 765 (2nd Cir.1992); *Redcliffe, supra* ; *Foss, supra* ; *Silver Star, supra.*

In contrast, this case involves a situation where Jones Stevedoring's services were wholly designated for the benefit of the GOLI-ATH. Jones Stevedoring has submitted un-

FMLA and therefore reference the "furnishing" requirement).

disputed evidence that Gilco purchased the GOLIATH and chartered the barges for the express purpose of transporting the housing units to Alaska. Neither the GOLIATH nor the barges was physically capable of transporting the housing units without the assistance of the other. Unlike the carrier in *Foss*, Gilco was in the business of constructing and installing buildings on real property, "not in the business for carrying cargo for hire." Answer of KeyCorp Leasing to Complaint in Intervention of Jones Stevedoring, ¶ 4.

There is nothing in the record to support the conclusion that any other barges would hold the housing units, or that any other tugboat would supply the motive power to tow the barges with the housing units to Alaska. In short, at the time Jones Stevedoring loaded the housing units on the barges, all parties clearly understood that the barges would supply the physical space, and the GOLIATH would supply the motive power needed to transport the housing units to Alaska. Neither the physical space, nor the motive power, standing alone, would permit transport of the housing units to Alaska. Instead, the GOLIATH and the barges were intended to, and did, act as a unit in transporting the housing units, consistent with the parties' understanding at the time Jones Stevedoring performed its loading services. Nothing in the record indicates that either the GOLIATH or the barges dedicated any portion of their capability to any other task.

It is true that in the above cases, the putative lienor provided *supplies,* while in this case, Jones Stevedoring provided *services.* KeyCorp also notes that the barges were not yet connected to the GOLIATH at the time Jones Stevedoring loaded the barges and that the GOLIATH was not involved in turning the barges during the loading. KeyCorp's Memorandum in Support of Partial Summary Judgment, p. 7. However, the FMLA does not distinguish between supplies and services, but instead requires provision of "necessaries," a term clearly intended to encompass provision of stevedoring services. Thus, there is no reason to distinguish between supplies and services when considering the propriety of a maritime lien.

Nor does the fact that the barges were not connected to the GOLIATH at the time the services were performed provide a particularly meaningful distinction when considering this issue. Assuming that the parties have a clear understanding as to the vessel for which the supplies or services are intended, delivery to the owner for later delivery to the vessel will not defeat a lien claim. *See, e.g., Jeffrey v. Henderson Bros., Inc.,* 193 F.2d 589, 594 (4th Cir.1951) ("It is established that the statutory lien for supplies ordered by an owner for use on a vessel and actually used thereon is not lost by delivering them to the owner or to some convenient place to be thence taken to the ship.... A supply man may in effect make the owner his agent to complete the furnishing of supplies by putting the goods on board.") (citations omitted); *McKenzie v. JIM–JET II,* 133 F.Supp. 804, 807 (E.D.N.C. 1955) ("[D]elivery to the owner for purpose of delivery to the vessel, which followed, constitutes a furnishing to the vessel as much so as if delivery had been made on board or at side of the vessel."); *Davis v. United States Gas Screw NOLA DARE,* 125 F.Supp. 677, 678 (E.D.N.C.1954); (quoting *Jeffrey* ).

In this case, the invoices sent by Jones Stevedoring are addressed to the barges and/or their owners, as well as to Gilco. They specify that Jones Stevedoring had been employed to "load housing modules." By failing to reference the GOLIATH, the invoices alone are not sufficient to show that Gilco and Jones Stevedoring intended and anticipated that the barges would be connected to and towed by the GOLIATH. However, Jones Stevedoring has submitted uncontroverted evidence that this was the intent of, and within the contemplation of, the parties at the time of contracting. KeyCorp has presented no evidence that Gilco had any interest in any other vessel, and has not denied that Gilco purchased the GOLIATH for the express purpose of transporting the housing units to Alaska by means of ocean towage. Unlike a case in which stevedoring services were performed on board one barge among a fleet of barges owned or chartered by a company which regularly carries cargo for hire, here Gilco apparently was engaged

in a single marine venture. That venture consisted of the transport of its housing units to Alaska by the GOLIATH towing barges on which Jones Stevedoring performed stevedoring services.

## IV. *Interpretation of the Term "Vessel"*

Under *Foss*, the "furnishing" requirement of the FMLA is met regardless of whether a tugboat and barges are considered as a single vessel. KeyCorp also argues that barges are always considered a vessel separate from the tugboat which tows them, and therefore cannot be combined with a tugboat into a single vessel for the purpose of a maritime lien. This premise of this argument is flawed.

The word "vessel" is used in many different contexts of admiralty and maritime law, such as the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901–950, the Jones Act, 46 U.S.C. § 688.[4] Limitation of Shipowners' Liability Act ("LLA"), 46 U.S.C. § 181 *et seq.*, and the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 *et seq.* However, both the statutory definitions of "vessel" and the general maritime law are rather vague as to exactly what structure(s) fall within that definition of that term.

The general definition of "vessel" set out by Congress is "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation by water." 1 U.S.C. § 3. This definition applies to every federal statute, unless that statute itself prescribes another definition. *See United States v. Boyden*, 696 F.2d 685, 687 (9th Cir.1983) (cautioning that a vessel qualifying under 1 U.S.C. § 3 may not be a vessel qualifying under Section 10 of the Rivers and Harbors Act). At least one court has applied this definition to a maritime lien.

*M/V MARIFAX v. McCrory*, 391 F.2d 909 (5th Cir.1968) (applying lien under 46 U.S.C. § 971 to repair work performed on ship not used in navigation in 15 years).

KeyCorp argues that the barges are the only vessels to which Jones Stevedoring delivered, or on which Jones Stevedoring performed, its services. Because Jones Stevedoring did not load housing units directly onto the GOLIATH, it claims that Jones Stevedoring may not assert a lien against the GOLIATH. In support, KeyCorp relies on *Norton v. Warner Co.*, 321 U.S. 565, 64 S.Ct. 747, 88 L.Ed. 931 (1944) and *Jeffrey v. Henderson Bros. Inc.*, *supra*. However, those cases do not address the issue of when a barge and a tugboat will be considered a single vessel for purposes of the FMLA.

In *Jeffrey*, the Fourth Circuit considered the priority of claims against a steel barge furnished with machinery and equipment for cleaning and screening coal. The barge was initially towed back and forth from a river bank to the place of dredging. Later, the barge was moored close to shore and kept in place with mooring lines and spuds or moved along the shoreline by loosening the mooring lines. During this later period of operation, the barge was initially supplied with steam power from machinery on board the barge, but later the barge was furnished electric power *via* a cable running from a pole on shore to a pole on the barge. There was no apparent dispute that the barge at issue was a "vessel." Instead, the issue was whether the barge had been "withdrawn from navigation" during its shore-side operations. While the court considered a number of factors which might also be relevant to whether a structure is a "vessel" (*i.e.* how permanently the barge was moored and the qualifications of the crew employed to operate it), the court

4. The Jones Act does not use the word "vessel," but instead uses the term "seaman," stating that "[a]ny *seaman* who shall suffer personal injury in the course of his employment may ... maintain an action for damages." 46 U.S.C. § 688(a) (emphasis added). The term "seaman" has been defined by reference to LHWCA and has thereby been restricted to mean "a master or member of a crew of any vessel," a clause used in 33 U.S.C. § 902(3)(G) to exclude those persons from LHWCA coverage:

"[M]aster or member of a crew" is a refinement of the term "seaman" in the Jones Act; it excludes from LHWCA coverage those properly covered under the Jones Act. Thus, it is odd but true that the key requirement for Jones Act coverage now appears in another statute.

*McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 347, 111 S.Ct. 807, 813, 112 L.Ed.2d 866 (1991).

did not discuss the status of the barge while it was in tow. Instead, the court determined that the barge was not withdrawn from navigation while being operated near the shore. Thus, this case is of little use in deciding whether a tugboat with barges in tow is appropriately considered the "vessel" referenced in the FMLA.

*Norton* involved a barge with no motive power of its own which was moved by towing or by the winding up of a cable by means of a hand-operated capstan. A bargeman was injured when the capstan bar pulled out and struck him on the chest. The Supreme Court determined that the bargeman was excluded from coverage under the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901–950, because he was a "master or member of a crew of [a] vessel." Relying exclusively on 1 U.S.C. § 3, the Court stated that: "A barge is a vessel within the meaning of the [LHWCA] even when it has no motive power of its own, since it is a means of transportation on water." 321 U.S. at 571, 64 S.Ct. at 751. The Court did not address the issue of whether a barge and tugboat were a single vessel.

These cases and the general definition contained in 1 U.S.C. § 3 are not helpful in deciding when, if ever, a barge and a tugboat will be considered *one* vessel for purposes of the FMLA. There is no doubt that the GOLIATH, the BISMARK, and the ZB–335 are each a "vessel" as described in 1 U.S.C. § 3. *See, e.g., City of Los Angeles v. United Dredging Co.,* 14 F.2d 364 (9th Cir.1926) (discussing cases holding barges to be "vessels" for various purposes). The barges obviously did not have any of the characteristics that proved problematic in *Kathriner v. Unisea, Inc.,* 975 F.2d 657 (9th Cir.1992) (finding that the hull of a Liberty ship which had been converted into a floating fish factory, but which was permanently anchored and tied to a dock, hooked up to city sewage, city water mains, telephone lines, and cable television was not a "vessel" for purposes of either the Jones Act or the LHWCA).

However, it is equally true that a tugboat with two barges in tow, *when considered as a unit,* fits the description of "an artificial contrivance ... capable of being used as a means of transportation by water" in 1 U.S.C. § 3. Thus, the question is whether the GOLIATH and the barges, *as a unit,* are appropriately considered the "vessel" to which Jones Stevedoring may look for payment of the cost of its stevedoring services. This court has considered the interpretations given the term "vessel" by courts considering other maritime statutes and concludes that the "vessel" at issue in this case appropriately includes the GOLIATH and the barges *as a unit.* As explained below, this is consistent with other interpretations of the term "vessel" and results in a limited opportunity for a claim to a maritime lien which is consistent with the purposes of the FMLA.

## V. *Treatment of Tugboats and Their Accompanying Tows as a Single Vessel*

While this court is aware of no decision to this effect under the FMLA, cases involving other maritime statutes have treated a tugboat and its tow(s) as a single vessel.

For example, the Harter Act, 46 U.S.C. §§ 190–96, prohibits certain terms in contracts of carriage between ports of the United States and inland water carriage under bills of lading. In 1927, the Supreme Court considered application of the Harter Act to a shipment of barley on board a barge with no motive power of its own being towed by a steamboat. The Court determined that the barge and the steamboat, in combination, were the "vessel transporting" the barley within the meaning of the Harter Act. That decision was based, in part, on the physical reality that the transportation of the cargo could not have been accomplished without the motive power of the steamboat and that the parties clearly contemplated the joint operation of the barge and steamboat:

> The fact that we are dealing with vessels, which by a fiction of the law are invested with personality, does not require us to disregard the actualities of the situation, namely, that the owner of the tug towed his own barge as a necessary incident of the contract of affreightment, and that the transportation of the cargo was in fact effected by their joint operation. The bill of lading declares that the cargo was

shipped on board the barge. *But it was to be transported, and this the barge alone was incapable of doing since she had no power of self-movement. It results, necessarily, that it was within the contemplation of the contract that the transportation would be accomplished by combining the barge with a vessel having such power . . . . To transport means to convey or carry from one place to another; and a transportation contract for the barge without the tug would have been as futile as a contract for the use of a freight car without a locomotive.*

*Salz*, 273 U.S. at 328–29, 47 S.Ct. at 369 (emphasis added).

The Ninth Circuit made a similar observation when interpreting the provisions of the LLA, which provides that the "liability of the owner of any vessel . . . shall not . . . exceed the amount or value of the interest of such owner in such vessel, and her freight then pending." 46 U.S.C. § 183(a). In *Short v. THE COLUMBIA*, 73 F. 226 (9th Cir.1896), a barge in tow by a steamboat hit a pontoon which was floating near a dock. The barge began taking on water. The captain and two deckhands from the steamboat went into the hold of the barge in an effort to stop the leak but were crushed and killed by falling cargo when the barge suddenly listed to one side. The owner of the barge and steamboat sought to limit its liability to the value of the barge. The district court allowed the limitation, finding that the "collapsing of the barge was occasioned by the negligent shifting of some sacks of wheat by the master of the barge." *THE COLUMBIA*, 73 F. at 238. The Ninth Circuit reversed stating:

When the tug made fast and took in tow the barge, to perform the contract of carriage, the two became one vessel for the purpose of that voyage,—as much so as if she had been taken bodily on board the tug, instead of being made fast thereto by means of lines. . . .

[Therefore], no question of proximate cause, we think, arises in the case, for the reason that the tug and barge are, in law, considered one vessel, for the purpose of the voyage in question . . . [and], in according the petitioners a limitation of lia-

bility without the surrender of the tug Oklahoma, the court below was in error. *Id* at 237–39.

In this case, once the barges were connected to the GOLIATH, they became analytically indistinguishable from the containers placed in the cargo holds of the vessel in *Foss*. They had no motive power of their own. They simply held the cargo to be transported by the GOLIATH. No plausible argument could be made that a stevedore which loaded the containers in *Foss* would not be entitled to a maritime lien against the container vessel. Similarly, it makes no sense to limit Jones Stevedoring to a lien claim against the barges, the use of which all parties acknowledge was necessitated by the simple fact that it was physically impossible to place the housing units on the GOLIATH for carriage.

## VI. *The Purposes of the FMLA and the Intent of the Parties*

■ The purpose of the FMLA is not thwarted by granting a lien to Jones Stevedoring against the tugboat as well as the barges. From the outset, the FMLA was intended to encourage private investment in the maritime industry. *Equilease Corp. v. M/V SAMPSON*, 793 F.2d 598, 603 (5th Cir.), *cert denied*, 479 U.S. 984, 107 S.Ct. 570, 93 L.Ed.2d 575 (1986). Consistent with this purpose, later amendments to the FMLA were designed to protect providers of routine services to maritime ventures:

Our review leads us inexorably to the conclusion that it was the intent of the Congress to make it easier and more certain for stevedores and others to protect their interests by making maritime liens available where traditional services are routinely rendered.

*Grand Loyalty*, 608 F.2d at 201, citing *Nacirema Operating Co., Inc. v. S.S. AL KULSUM*, 407 F.Supp. 1222 (S.D.N.Y.1975).

The services provided by Jones Stevedoring in this case were unquestionably "traditional services" which were "routinely rendered." Additionally, they were critical to the success of Gilco's plans. It is undisputed that at the time Jones Stevedoring loaded the housing units onto the barges, Gilco and

Jones Stevedoring both assumed that the barges would be connected to the GOLIATH berthed alongside and that the entire unit would then proceed to Alaska under the motive power of the GOLIATH. Gilco and Jones Stevedoring "clearly understood that the GOLIATH would perform the towage" and the GOLIATH in fact did provide the motive power to take all three structures to Alaska. Jones Stevedoring's Facts, ¶ 1. It is also undisputed that this is exactly what transpired.

Limiting Jones Stevedoring to a lien against the barges would undermine the purposes of the FMLA and render meaningless the undisputed facts and clear intent of the parties involved in this suit. There is no principled reason why the term "vessel" of the FMLA should be interpreted more narrowly than that term is interpreted in other contexts. To the contrary, suppliers should not be denied liens against the "artificial contrivances" to which they supply goods and services through a court's overly myopic view of that term. Jones Stevedoring clearly supplied necessaries which benefited the GOLIATH. While there is no clear authority for granting a lien against a tugboat for stevedoring services performed on barges, uniqueness simply is not an appropriate basis for denying such a lien.

## VII. *Limited Scope of this Holding*

KeyCorp argues that allowing Jones Stevedoring a maritime lien under the circumstances of this case would result in an unprecedented expansion in the ability of suppliers of goods and services to obtain liens against various vessels. It would raise the specter of fishing trawlers having liens against the processor vessel that accepts and processes the trawler's catch because the trawlers are merely removable tackle for the processor. Response to Motion for Summary Judgment, p. 2. Similarly, the supplier in *International Marine Fuels of San Francisco, Inc. v. M/V CONSTELLATION GALAXY*, 825 F.2d 407, 1987 WL 38298 (unpublished 4th Cir.1987) would have a lien "not only against the GALAXY which received and used the fuel, but also against the barge that was the conduit for carrying the fuel, and against the tug that towed the barge to the GALAXY." *Id.*, p. 6. However, the parade of horribles envisioned by KeyCorp simply is not warranted under the limited holding recommended by this court.

The FMLA only allows a maritime lien in favor of a person who provides necessaries to a vessel. This inquiry involves an analysis of which vessel benefits from provision of the particular supply or service for which a lien is claimed. In the case of a processor vessel and a fishing trawler, both of which are capable of independent movement, the former processes the fish caught by the latter. KeyCorp simply has not presented sufficient facts to fully illuminate this hypothetical. Does the processing vessel process the fish of a number of fishing trawlers? Are fishing trawlers bound to deliver their catch to any particular processing vessel? Are fishing trawlers and the processing vessel to which they deliver their catch owned and/or chartered by the same person? All of these factors are relevant to this inquiry and may militate against a maritime lien in favor of the fishing trawler.

The scenario in *CONSTELLATION* simply is not analytically synonymous to the facts presented here. In that case, the barge carrying fuel and the tug towing the barge were used by the fuel supplier to meet his obligation of providing fuel to the GALAXY. The court granted the supplier a lien against the GALAXY. The supplier would not also have a lien against the tugboat, because it was *using* the barge and tug, *not providing necessaries to them.* In contrast, the GOLIATH was being provided with—and benefitting from—the stevedoring services provided by Jones Stevedoring.

In order to accomplish its mission of transporting the housing units to Alaska, the GOLIATH needed a mechanism of holding the housing units just as surely as it needed fuel to power its engines. Under KeyCorp's analysis, if the barges in this case were designed to carry additional fuel or supplies for the GOLIATH's journey in addition to the housing units it was transporting, the fuel supplier who loaded its fuel onto the barges would not be entitled to a maritime lien against the GOLIATH even if it shared the same under-

standing (*i.e.* that the GOLIATH was to transport the barges holding the housing units), and loaded the fuel onto the barges under the same circumstances (*i.e.* while the barges were berthed next to the GOLIATH) as did Jones Stevedoring. As in *Salz, supra,* this court is not required to "disregard the actualities of the situation." Taking those actualities into consideration, this court can discern no principled reason for such a myopic interpretation of the provisions of the FMLA.

■ This decision is limited in scope and turns on the facts that: (1) Gilco purchased the GOLIATH and chartered the barges for the express purpose of transporting housing units that neither the tugboat nor the barges could independently transport; (2) the barges were unmanned, passive tows under the direction and control of the master and crew of the GOLIATH; (3) at the time the housing units were loaded, the barges were berthed next to the GOLIATH and Gilco and Jones Stevedoring both intended and contemplated that the barges would be connected to the GOLIATH and that the entire unit would then proceed to Alaska under the GOLIATH's motive power; and (4) the barges were in fact connected to the GOLIATH and the entire unit proceeded to Alaska as planned. Absent each of these critical facts, Jones Stevedoring may well be limited to a lien against the barges only.

### RECOMMENDATIONS

For the reasons stated above, the Motion for Partial Summary Judgment by Jones Stevedoring Company (docket # 69) should be GRANTED and KeyCorp Leasing Ltd.'s Motion for Partial Summary Judgment on Question of Stevedore's Lien (docket # 71) should be DENIED.[5]

DATED this 20th day of December, 1996.

### NOTICE

Objections to these Findings and Recommendations are waived unless written objections are filed and served within ten days

---

5. This ruling does not dispose of this case as issues remain as to the amount owed to Jones

---

after service. 28 U.S.C. § 636(b)(1)(B) and (C); LR 135–3.

---

Stevedoring by Gilco and the nature of the contract between Jones Stevedoring and Gilco.